UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BABYGRANDE GLOBAL, INC., | |
| Plaintiff, | |
| -against- | 24-CV-6785 (JGLC) |
| ENRIQUE MAG RODRIGUEZ; EVEN LABS INC.; DAMIEN DDOT WASHINGTON, | **ORDER** |
| Defendants. | |

JESSICA G. L. CLARKE, United States District Judge:

On December 17, 2025, the Court directed Defendant Damien "DDot" Washington

("Washington") to note for the Court any of his filings that had not been docketed by the Pro Se

Intake Unit. ECF No. 157. On December 18, 2025, Washington emailed the Court the attached

letter, explaining that only one filing "remains missing from the docket." ECF No. 161. That

filing, emailed to the Court on November 7, 2025, pertained to issues the Court addressed at a

case management conference on December 2, 2025, and in a subsequent Order on December 4,

2025. ECF No. 138. For completeness, however, the Court also attaches the six Exhibits that

comprise Washington's November 7, 2025 filing, as titled in Washington's email, below:

1) Exhibit A - (FAA-Emergency-Order-11-6-25)
2) EXHIBIT B (B as in Blatant Labor Violations) (11-07-25)
3) EXHIBIT C (11-07-25)
4) Exhibit D (D as in Deliberately Misclassified) (11-07-25)
5) EXHIBIT E (as in Employment Misclassification)(11-02-2025)
6) EXHIBIT F (F as in Fraud) (11-07-2025)

These Exhibits were likely not docketed by the Pro Se Intake Unit because they did not

meet the required standards for electronic filing. To avoid this issue in the future, Defendant

Washington is hereby directed to email all future filings to the Pro Se Intake Unit, to the Court,

and to all counsel—including each email address in the "To:" field—to allow the Court to ensure

that all of his filings have been properly docketed.

Dated:  December 23, 2025
        New York, New York

                                        SO ORDERED.

                                        _Jessica Clarke_

                                        JESSICA G. L. CLARKE
                                        United States District Judge

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

Honorable Judge Jessica G. L. Clarke
Southern District of New York
December 18, 2025

**BABYGRANDE GLOBAL, INC.,**
 Plaintiff,

v.

**EVEN LABS, INC., ENRIQUE "MAG" RODRIGUEZ, and DAMIEN "DDOT" WASHINGTON,**
 Defendants.

Case No. **1:24-cv-06785 (JGLC)**

---

### RE: Compliance with December 17, 2025 Order – Undocketed Filing

Dear Judge Clarke,

I write in compliance with the Court's December 17, 2025  Order (Dkt 157) directing me to identify any filings that have not yet been docketed.

At this time, only one filing remains missing from the docket:

- Date submitted: November 7, 2025

- Description: Defendant Damien "DDOT" Washington's Response to EVEN Defendants' submission at Dkt. 129 with attached exhibits.

All other filings that I previously raised with the Court appear to have since been entered on the docket. I respectfully submit this letter solely to comply with the Court's directive.

Respectfully submitted,

  \s/ Damien "DDot" Washington
  Defendant, Pro Se
  P.O. Box 1468 Landover, MD, 20785
  ddotomen.com@gmail.com
  301-806-7111

# EXHIBIT

# A

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

**DEPARTMENT OF TRANSPORTATION**

**Federal Aviation Administration**

**Emergency Order Establishing Operating Limitations on the Use of Navigable Airspace**

**AGENCY**:    Department of Transportation, Federal Aviation Administration (FAA)

**ACTION:**    Emergency Order Establishing Operating Limitations on the Use of Navigable Airspace

**SUMMARY:** This Order reduces or temporarily prohibits certain operations in the navigable airspace to ensure the safety of aircraft and the efficiency of the National Airspace System (NAS). To maintain the highest standards of safety in the NAS, certain air carriers will be required to reduce by their total daily scheduled domestic operations between 6:00 a.m. and 10:00 p.m. local at each airport by 10 percent, subject to the provisions set forth in this Order, in addition to other operational reductions in the NAS.

**DATES**: This action is effective November 7, 2025.

**ADDRESSES**: If you wish to review the background documents or comments received in this proceeding, you may go to *http://www.regulations.gov* at any time and follow the online instructions for accessing the electronic docket. You may also go to the U.S. Department of Transportation's Docket Operations in Room W12-140 on the ground floor of the West Building at 1200 New Jersey Avenue, SE., Washington, DC, between 9:00 a.m. and 5:00 p.m., Monday through Friday, except Federal holidays.

**FOR FURTHER INFORMATION CONTACT:**

Al Meilus, Slot Administration and Capacity Analysis, FAA ATO System Operations Services, AJR-G5, Federal Aviation Administration, 800 Independence Avenue SW, Washington, DC 20591; telephone (202) 267-2822; email *7-awa-slotadmin@faa.gov*.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

**SUPPLEMENTARY INFORMATION:**

## I.      Introduction

This Order reduces or temporarily prohibits certain operations in the navigable airspace to ensure the safety of aircraft and the efficiency of the NAS. The Administrator of the Federal Aviation Administration (FAA) is issuing this Order to address safety risks and delays presented by air traffic controller staffing constraints caused by the continued lapse in appropriations. This Order takes effect on November 7, 2025, and will remain in effect until canceled by the FAA.

## II.     Background

The U.S. Government has exclusive sovereignty over the airspace of the United States.[1] Under this broad authority, Congress has granted the Administrator extensive and plenary authority to ensure the safety of aircraft and the efficient use of the nation's navigable airspace. In this regard, the Administrator is required to develop plans and policies for the use of navigable airspace and assign by regulation or order under such terms, conditions and limitations as he may deem necessary to ensure its safe and efficient use.[2] The Administrator may modify or revoke an assignment when required in the public interest.[3] Furthermore, in carrying out the Administrator's safety and efficiency responsibilities under the statute, the Administrator must: (1) assign, maintain, and enhance safety and security as the highest priorities in air commerce, and (2) control the use of the navigable airspace and regulate civil operations in that airspace in the interest of the safety and efficiency of those operations.[4]

---

[1] 49 U.S.C. § 40103.
[2]  49 U.S.C. § 40103(b)(1), as previously codified in 49 U.S.C. App. § 307(a). Title 49 was recodified by Pub. L. 103-222, 108 Stat. 745 (1994). The textual revisions were not intended to result in substantive changes to the law. The recodification stated that the words in § 307(a) "under such terms, conditions, and limitations as he may deem" were omitted as surplus. H. Rpt. 103-180 (103d Cong., 1st Sess. 1993) at 262.
[3] *Id*.
[4] 49 U.S.C. §§ 40101(d)(1) and (4).

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

The FAA's statutory authority to ensure "the safety of aircraft" and "the efficient use of airspace" encompasses its management of the nationwide system of air commerce and the Air Traffic Control (ATC) system. Ensuring the safe and efficient use of the airspace means that the FAA must take all necessary steps to prevent safety risks to, or situations potentially adversely affecting the overall safety of the ATC system for which the FAA is responsible.

Due to a lapse in appropriations, air traffic controllers have been working without pay since October 3, 2025. Since then, the FAA's Office of Aviation Safety (AVS) and Air Traffic Organization (ATO) have continued to review, monitor and evaluate ATC safety. As part of this review, the FAA assessed voluntary safety reports submitted for the month of October. The reports indicated users of the system had concerns about its performance even with current mitigations in place. The FAA has also observed evidence of increased stress on the NAS in aviation safety data, particularly at 40 high traffic airports, identified in Appendix A ("High Impact Airports"). While current mitigations have managed risk, delays are increasing, and additional mitigations are now necessary.

The FAA's initial review of data indicates the system is stressed. With continued delays and unpredictable staffing shortages, which are driving fatigue, risk is further increasing, and the FAA is concerned with the system's ability to maintain the current volume of operations. Accordingly, the FAA has determined additional mitigation is necessary.

## III.    National Environmental Policy Act Categorical Exclusion

The FAA has determined that this action qualifies for categorical exclusion (CATEX) under the National Environmental Policy Act (42 U.S.C. §§ 4321, *et seq.*) in accordance with FAA Order 1050.1G, "FAA National Environmental Policy Act Implementing Procedures,"

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

paragraph B-2.5(j). This CATEX applies to the following category of actions: "Implementation of procedures to respond to emergency air or ground safety needs, accidents, or natural events with no reasonably foreseeable long-term adverse impacts." This action is not expected to cause any potentially significant environmental impacts, and no extraordinary circumstances exist that would preclude the use of this CATEX and require a higher level of NEPA review.

## IV.    Order

### a.  Reduction of Operations at High Impact Airports

Accordingly, with respect to flight operations at High Impact Airports, under the authority provided to the Secretary of Transportation and the FAA Administrator by 49 U.S.C. §§ 40103, 40113, and 46105(c), it is hereby ordered that:

1. To accommodate reduced ATC services, no later than 6:00 a.m. EST on November 14, 2025, each 14 CFR part 121 and commuter or scheduled 135 air carrier operating at High Impact Airports listed in Appendix A must reduce by 10 percent its total daily scheduled domestic operations between 6:00 a.m. and 10:00 p.m. local at each airport, subject to the following provisions:

   a. Reductions in operations shall be calculated by marketing code, not operating certificate, provided that the reductions for any single operating certificate may not exceed 15 percent to prevent disproportionate reductions on regional routes. For carriers that do not have a marketing code, reductions in operations shall be calculated by operating certificate.

   b. The baseline for calculating reductions is the total number of currently scheduled operations.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

c. Beginning November 7, 2025, carriers shall begin reductions in operations to achieve the total reduction of 10 percent by November 14, 2025, with minimum reductions at each High Impact Airport as follows:

    i. By 6:00 a.m. EST on November 7, 2025, by 4 percent;

    ii. By 6:00 a.m. EST on November 11, 2025, by 6 percent;

    iii. By 6:00 a.m. EST on November 13, 2025, by 8 percent; and

    iv. By 6:00 a.m. EST on November 14, 2025, and thereafter, by 10 percent.

d. Operations shall be reduced seven days in advance on a rolling schedule. Thus, the initial list of reduced operations submitted to the FAA on November 7, 2025, pursuant to subparagraph (f), must provide for reductions to schedules from November 7, 2025, to November 14, 2025. On November 8, 2025, carriers must retain a reduction of at least 10 percent for November 15, 2025, and notify the FAA of those reductions, etc.

e. The FAA will treat any slot as used for historic precedence or a timing as operated for the purposes of preserving the historical baseline for the next corresponding season if the carrier does not operate it in accordance with the provisions in this paragraph.

f. Each carrier subject to the provisions of this paragraph must submit a list of reduced operations to the FAA Slot Administration at 7-awa-slotadmin@faa.gov no later than November 7, 2025, and daily thereafter. Lists of reduced operations are not individually subject to approval by the FAA, but the Administrator reserves the authority to reject or direct modifications to such lists to prevent unacceptable disproportionate impacts to flight availability including regional

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go-live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

routes and Essential Air Service and to ensure even distribution of reductions throughout the day at each airport.

g.  The FAA expects that carriers work cooperatively to achieve ratable and evenly distributed reductions throughout the day that do not have disproportionate impacts on communities or specific hours of the day. If carriers are unable to do so, the FAA may direct cancellations on a more prescriptive basis.

h.  The FAA has consulted with the Department of Justice, Antitrust Division (DOJ). Consistent with these discussions, the DOJ and FAA advise that antitrust counsel for the air carriers be present for all competitor communications given the unusual, emergency circumstances involved. Based on the temporary nature of these reductions, the presence of respective antitrust counsel for all affected air carriers, the limited nature of the cooperation authorized, and the exigent safety need to reduce stress on the NAS, the DOJ stated that it "is not presently inclined to initiate antitrust enforcement action against any carrier's actions taken to comply with the FAA Emergency Order."[5] This understanding does not authorize cooperation between carriers on scheduling, except as it relates to the temporary reductions in operations directed by this order, or pricing matters. Moreover, the DOJ reserved the right to bring an enforcement action against any conduct that violates the antitrust laws.

i.  Carriers must not engage in unfair, deceptive, or anticompetitive practices regarding their slot usage, leasing agreements, or operations.

---

[5] Letter from Abigail Slater Assistant Attorney General Antitrust Division, U.S. Department of Justice to William McKenna, Chief Counsel, Federal Aviation Administration (Nov. 6, 2025).

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

2. When staffing trigger reports happen at High Impact Airports, a dual Airspace Flow Program strategy may be implemented for general aviation and commercial traffic. In addition, for the duration of this order, general aviation operations may also be reduced by up to 10 percent at High Impact Airports, including TEB, HOU, and DAL.

3. The FAA may enforce this Order through an enforcement action seeking a civil penalty under 49 U.S.C. § 46301(a). A carrier that is not a small business as defined in the Small Business Act, 15 U.S.C. § 632, will be liable for a civil penalty of up to $75,000 for every flight it operates above the limits set forth in this Order. A carrier that is a small business as defined in the Small Business Act will be liable for a civil penalty of up to $16,630 for every flight it operates above the limits set forth in this Order. The FAA also could file a civil action in U.S. District Court, under 49 U.S.C. §§ 46106 and 46107, seeking to enjoin any air carrier from violating the terms of this Order.

**b. Prohibition on Commercial Space Launches and Reentries During Peak Hours**

Accordingly, with respect to commercial space launches and reentries, under the authority provided to the FAA Administrator by 49 U.S.C. §§ 40103, 40113, and 46105(c), and authority delegated to the FAA Administrator under 51 U.S.C. § 50909(a), it is hereby ordered that, beginning at 6:00 a.m. EST on November 10, 2025, and until this Order is cancelled, Commercial space launches and reentries will only be permitted between 10:00 p.m. and 6:00 a.m. local time.

**c. Termination of ATC Service Due to Staffing Levels**

Accordingly, with respect to ATC services, under the authority provided to the FAA Administrator by 49 U.S.C. §§ 40103, 40113, and 46105(c), it is hereby ordered that:

1. When an FAA owned and operated facility does not have adequate staffing levels, ATC may elect not to provide the following services:

   a. Radar Traffic Information Service;

   b. Radar Assistance to visual flight rule (VFR) aircraft;

   c. Terminal Radar Services for VFR aircraft;

   d. VFR Traffic Pattern Operations;

   e. Practice Approaches to VFR aircraft;

   f. Flight checks services to restore inoperable equipment and approaches;

   g. ATC services to parachute operations; or,

   h. ATC services to certain special or unusual operations.

2. When an Air Traffic Control Assigned Airspace (ATCAA) or Military Operating Area (MOA) is located within a geographical area served by an FAA owned and operated facility that does not have adequate staffing levels, ATO may elect not to activate the ATCAA or MOA.

## V.    Aviation Consumer Protection

The Office of Aviation Consumer Protection, a unit within the Department of Transportation's Office of the General Counsel, will separately issue guidance to carriers on reporting of causes of delays and cancellations and applicability of consumer protection requirements given this order.[6]

---

[6] *See* DOT, Reporting Causes of Flight Delays and Cancellations in Response to FAA's Order to Reduce Flights at 40 Airports Due to the Government Shutdown," https://www.transportation.gov/airconsumer/latest-news.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

The FAA may modify or withdraw any provision in this Order on its own or on application by any carrier for good cause shown. In particular, the FAA will continue to monitor data on NAS operations and performance and will amend this order as appropriate to ensure continued safety and efficiency of the NAS. Once funding is restored and the FAA has confidence the stress in the system has adequately decreased, the FAA expects to roll back operational restrictions required by this order to restore normal operations.

Issued in Washington, DC, on November 7, 2025.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

**Appendix A**

| Code | Airport |
|------|---------|
| ANC | Ted Stevens Anchorage International Airport |
| ATL | Hartsfield-Jackson Atlanta International |
| BOS | Boston Logan International |
| BWI | Baltimore/Washington International |
| CLT | Charlotte Douglas International |
| CVG | Cincinnati/Northern Kentucky International |
| DAL | Dallas Love Field |
| DCA | Ronald Reagan Washington National |
| DEN | Denver International |
| DFW | Dallas/Fort Worth International |
| DTW | Detroit Metropolitan Wayne County |
| EWR | Newark Liberty International |
| FLL | Fort Lauderdale/Hollywood International |
| HNL | Honolulu International |
| HOU | William P. Hobby Airport |
| IAD | Washington Dulles International |
| IAH | George Bush Houston Intercontinental |
| IND | Indianapolis International |
| JFK | New York John F. Kennedy International |
| LAS | Las Vegas McCarran International |
| LAX | Los Angeles International |
| LGA | New York LaGuardia |
| MCO | Orlando International |
| MDW | Chicago Midway |
| MEM | Memphis International |
| MIA | Miami International |
| MSP | Minneapolis/St. Paul International |
| OAK | Oakland International |
| ONT | Ontario International |
| ORD | Chicago O`Hare International |
| PDX | Portland International |
| PHL | Philadelphia International |
| PHX | Phoenix Sky Harbor International |
| SAN | San Diego International |
| SDF | Louisville International |
| SEA | Seattle/Tacoma International |

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

| SFO | San Francisco International |
|-----|---------------------------|
| SLC | Salt Lake City International |
| TEB | Teterboro |
| TPA | Tampa International |

Sent to the Office of the Federal Register

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.



U.S. Department
of Transportation

**Federal Aviation
Administration**

November 6, 2025

Abigail Slater, Esq.
Assistant Attorney General
Antitrust Division, Room 3109
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Dear Ms. Slater:

The Administrator of the Federal Aviation Administration (FAA) has determined, pursuant to 49 U.S.C. §§ 40103, 40113, and 46105(c) it is necessary to issue an emergency order limiting the use of navigable airspace, including reductions of operations at certain high traffic airports. In the course of FAA's surveillance of the health and safety of the National Airspace System (NAS), the FAA has observed evidence of increased stress on the NAS precipitated by the lapse in appropriations. While current mitigations have managed safety, delays are increasing, and additional mitigations are now necessary.

The temporary order requires certain carriers to reduce their total daily scheduled domestic operations by 10 percent. The order directs the covered carriers to work cooperatively to achieve ratable and evenly distributed reductions throughout the day that do not have disproportionate impacts on communities or specific hours of the day. The order clearly states that, if carriers cannot do so, the FAA may prescribe the distribution of reductions. This letter describes the procedures governing those cooperative conversations regarding the selection of which operations may be reduced to ensure carriers do not run afoul of antitrust laws.

The order makes clear the FAA is not authorizing cooperation between carriers on pricing matters or on scheduling except as it relates to the temporary reductions in operations. Moreover, the order directs carriers not engage in unfair, deceptive, or anticompetitive practices regarding their slot usage, leasing agreements, or operations. The FAA also advises that antitrust counsel for the airlines be present for all competitor communications given the unusual, emergency circumstances involved. Finally, under the order, the Administrator reserves the authority to reject or direct modifications to reduced operations, which are identified by carriers seven days in advance of the scheduled operation, to prevent unacceptable disproportionate impacts to flight availability including regional routes and Essential Air Service and to ensure even distribution of reductions throughout the day at each airport.

The FAA is seeking assurances from the Department of Justice, it would not seek to challenge as a violation of the U.S. antitrust laws any air carrier's participation in the meeting with counsel present on the reduction of operations under the limited duration of the order or an air carrier's

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication.
Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

unilateral actions taken to comply with the order. The order will also be subject to modification by the Administrator.

Please advise if these provisions contained in the order are acceptable to you.

Sincerely,

William McKenna
Chief Counsel

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.



## U.S. DEPARTMENT OF JUSTICE
Antitrust Division

## ABIGAIL SLATER
Assistant Attorney General

RFK Main Justice Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
(202)514-2401 / (202)514-0306 (Fax)

November 6, 2025

William McKenna, Acting Deputy Administrator and Chief Counsel
U.S. Department of Transportation,
Federal Aviation Administration,
800 Independence Ave, SW.,
Washington, DC 20591

Re: DOT's Emergency Order Establishing Operating Limitations on the Use of Navigable Airspace

Dear Mr. McKenna:

I write in response to your November 6, 2025 request for assurance that the Department of Justice would not seek to challenge as a violation of the antitrust laws any air carrier's actions taken to comply with the Federal Aviation Administration's ("FAA") Emergency Order Establishing Operating Limitations on the Use of Navigable Airspace ("FAA Emergency Order" or "Order"). I understand the Order is being issued because the Secretary of Transportation has determined, pursuant to 49 U.S.C. §§ 40103, 40113, and 46105(c), that it is necessary to address safety risks and delays presented by air traffic controller staffing constraints caused by the continued lapse in appropriations.

The FAA Emergency Order requires that any air carrier operating at the 40 U.S. airports identified in Appendix A of the Order must reduce its total daily scheduled domestic operations by 10 percent, subject to various provisions. It also requires these carriers to "work cooperatively to achieve ratable and evenly distributed reductions throughout the day that do not have disproportionate impacts on communities or specific hours of the day." I also understand that the FAA believes that some air carrier cooperation between competitors is necessary to meet the serious and exceptional situation occurring at U.S. airports right now due to the prolonged government shutdown.

The published document could contain minor changes due to formatting and editorial requirements, and the docket will not go live until publication. Upon publication, the document can be found on the Federal Register's website at www.federalregister.gov.

William McKenna, Chief Counsel
November 6, 2025
2

     I understand that the FAA's Administrator (or his delegee) will advise all carriers cooperating under the Order that the Antitrust Division expects that respective antitrust counsel for all affected airlines be present for all competitor communications, and that communications relating to the cooperation be retained, given the unusual, emergency circumstances under which FAA is requiring temporary schedule coordination between competitors. I would also appreciate if the FAA would instruct Airlines for America ("A4A"), or any other industry association facilitating scheduling meetings between carriers scheduled to satisfy the requirements of the Order, to invite representatives of the Department of Justice Antitrust Division to attend any such meetings.

     For these reasons, the Department is not presently inclined to initiate antitrust enforcement action against any carrier's actions taken to comply with the FAA Emergency Order that meet the safeguards described above. This expresses the Department's current enforcement intention regarding the carriers' cooperation under the Order. The Department reserves the right to bring an enforcement action against any conduct that violates the antitrust laws.

     Sincerely,

Abigail Slater

# EXHIBIT

# B

AT&T 📶 📶 🛜 **99**

Wednesday, October 2

# 7:17



**Mag Rodriguez EVEN**                    2m ago
$7200 a month
Extra .2% equity
Full time
Director of Business Development

# EXHIBIT

# C

AT&T                                    80

Sunday, August 4

1:57

 **Mag Rodriguez EVEN**                  now
Let's just close these deals

 **Mag Rodriguez EVEN**                  now
Head of Business Development at EVEN
by Q4 is the goal

 **Mag Rodriguez EVEN**                  now
Now that's the move

# EXHIBIT

# D

AT&T

## Wednesday, October 2

## 7:14



**Mag Rodriguez EVEN**     now
You cool with this pay as contractor thing or no

# EXHIBIT

# E

Sort by: Top ⌄

FTC sues Ticketmaster
1h ago • 5,590 readers

Jobseekers vindicated
1h ago • 3,584 readers

Hermès wins Birkin bag
32m ago • 2,396 readers

Google embeds Gemini
1h ago • 834 readers

Show more ⌄

 Mag Rodriguez 🔗 · 1st
CEO of EVEN | even.biz
**Visit my website**
1h · 🌐

···   ✕

Building something people want to be a part of will always feel surreal.

What makes **EVEN** special is not just the product. It is the people  ...more

**EVEN**

↘ **WE'RE HIRING:**

# HEAD OF BUSINESS DEVELOPMENT

WE'RE LOOKING FOR A HEAD OF BUSINESS DEVELOPMENT **TO LEAD PARTNERSHIPS AND GROWTH,** DRIVING OUR MISSION TO POWER ARTISTS AND THEIR FANS.

**EVEN.BIZ**

ZipRecruiter is the smarte



Hiring? Find great ta

( **Post Jobs for** )

About    Accessibility
Privacy & Terms ⌄
Advertising    Business
    Get the LinkedIn app

**Linked**🔗 LinkedIn Corp

💙❤️ 33                    2 comments • 3 reposts

👍 Like        💬 Comment        🔁 Repost        ➤ Send

# EXHIBIT

# F

