UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

BABYGRANDE GLOBAL, INC.,

                  **Plaintiff,**

                                                   **Index No.: 1:24-cv-06785**

-against-

ENRIQUE "MAG" RODRIGUEZ; EVEN LABS INC.;
and DAMIEN "DDOT" WASHINGTON,

                  **Defendants.**

-----------------------------------------------------------------------X

### DECLARATION OF DAMIEN "DDOT" WASHINGTON

I, Damien "DDot" Washington, respectfully submit this supplemental declaration in response to the Court's June 2, 2026 Order. I make this declaration based on my personal knowledge, except where otherwise stated, and if called as a witness I could and would testify competently to the matters stated herein.

1. I respectfully submit this declaration to correct the record concerning the phone, the passcode issue, the laptop, my travel, my medical/accessibility circumstances, the Stanilus/Uber-related issues, and the circumstances the Court has described as "apparent contradictions". I acknowledge the seriousness of the Court's orders and of the allegations being made by EVEN defendants. I respectfully maintain that I have complied with the Court when I have been literally, physically, and practically able to do so, and I will continue to act in good faith.

2. My full legal name is Darryl Damien Washington. I professionally use Damien "DDot" Washington. Travel records, special-service documentation, or other records listing "Darryl Washington" refer to me.

3. I do not dispute that the EVEN issued laptop belonged to EVEN. I have consistently maintained, however, since this device dispute first arose in or around September 2025, that my phone did not belong to EVEN and was my personal phone. I have acknowledged that Enrique "Mag" Rodriguez paid to replace a phone that I previously owned after it was damaged while on a work trip but I have consistently disputed EVEN's deliberately misleading statements and  misrepresentations of my personal phone as an EVEN-owned corporate device.

4. I left EVEN as a full-time employee in March 2024, prior to this litigation. EVEN did not request, demand, or attempt to recover my personal phone at that time. The Babygrande litigation began on September 6, 2024, and I was named on October 30, 2024.

5. I was rehired by EVEN as a full-time employee on October 7, 2024. EVEN issued me a laptop on or about November 20, 2024.

6. To my knowledge, EVEN has not produced a device-issuance log, device acknowledgment form, written return obligation, inventory record, or contract provision showing that the phone or laptop was governed by any formal company device protocol signed by me. I have maintained that the EVEN/Rodriguez-controlled "ddot@even.biz" email account was not synced or downloaded to my devices and was accessed through Google Mail/Gmail or other third-party service applications.

7. On May 29, 2026, I physically produced the phone in my possession to the U.S. Marshals Service at the Greenbelt courthouse. I advised the Marshal that my attorney would

provide the information necessary to unlock the phone when EVEN's vendor arrived. My attorney provided that information. The Court's May 29 order reflects that USMS informed the Court that I brought the cell phone to the Greenbelt courthouse and that the information necessary to unlock the device had been provided.

8. I respectfully clarify the additional passcode issue. While I initially objected to providing access beyond the information necessary to unlock the device because I understood the Court's order to require production of the phone and information necessary to unlock the device, not additional credentials for unspecified applications or other areas of the phone. I maintain that objection to preserve the scope of the Court's order and my privacy and privilege concerns.

9. Nevertheless, I provided four additional codes that I believed could be accurate for other applications or access points. Those codes were provided through my attorney to USMS. I was not told with specificity what application, database, function, or "other part" of the phone the vendor was attempting to access, why such access was necessary, whether it fell within the Court-approved search protocol, or why the ordered search could not proceed against the data already available from the unlocked and imaged device.

10. I provided the additional codes under protest and without waiving my objection that the vendor must remain within the actual scope of the Court's order. I did not refuse to assist. I physically offered to appear at the Greenbelt courthouse within approximately 30 minutes to help resolve any legitimate access issue. USMS declined to allow me to do so.

11. I emphatically object to the characterization that I stated I could travel to the Greenbelt courthouse "at some point." That is not an accurate description of what occurred. I requested to immediately appear at the courthouse and represented that I could arrive

within approximately 30 minutes. I have witnesses who can attest that I requested to be allowed to immediately go to the courthouse to assist with the issue.

I also have documentation supporting that I was not made aware of the communications between USMS, the vendor, and my attorney until approximately 11:00 a.m. local time. Between approximately 11:00 a.m. and 11:45 a.m., I was in communication with my attorney requesting to be allowed to arrive at the courthouse to assist. A witness observed this. I was not seeking to delay the vendor indefinitely; I was attempting to resolve the issue immediately and in person.

12. For context and correlation and clarification for The Court, for approximately seven months, EVEN has not provided pertinent information about the duration of the previously scheduled forensic process. To the best of my knowledge, EVEN defendants did not notify my counsel in advance on the day of June 1st 2026 forensic inspection, provide details when the vendor would be arriving or scheduled to be at the courthouse to perform the search and imaging. Therefore I was not aware I was expected to respond to any technical issue in real time and was not told what application or access point was at issue, with respect to the Contempt continuing based on inaccurate information provided by EVEN Defendants.

13. In good faith, I still physically appeared at the Greenbelt courthouse at approximately 2:00 p.m on Monday June 1, 2026, and availed myself to assist with any access issue that had been identified. I affirm that CSO Parker at Greenbelt Courthouse communicated my arrival to USMS, but USMS declined to see me. I respectfully submit that these facts show continued cooperation and an effort to resolve a technical issue, not willful noncompliance.

14. I also respectfully note that EVEN counsel has notified my counsel that the EVEN vendor completed imaging of the phone and that I may retrieve the device from the Marshals without waiting for the vendor to finish running its searches. That commentary appears inconsistent with The Court ordered continued physical retention of the device as necessary for the vendor's work. It also creates confusion as to how I remain in contempt with respect to the phone if the phone was produced, unlocked at the device level, imaged, and made available for pickup.

15. I declare under penalty of perjury that I produced the phone in my possession, provided the device unlock information, and later provided additional codes through counsel when the vendor claimed additional access was needed. Therefore based on the Court's previous directives as I understand, contempt regarding the phone should be immediately rescinded.

16. I further attest that after the phone was returned to my possession, I observed, and a witness also observed, that the vendor had apparently accessed applications and contents that were previously represented to The Court as blocked or inaccessible.

17. I bring this to the Court's attention as it requires the record be corrected to reflect this fact. Since the vendor was able to access the applications or contents they claimed were blocked, then any continued representation that I prevented access or failed to provide necessary information is inaccurate and should not support contempt, sanctions, or any adverse inference.

18. I am not a forensic expert and do not know what technical process the vendor used, what it accessed, what it extracted, or what it searched. However, based on what I personally

observed after the phone was returned, I swear that I did not prevent access to the applications or contents at issue as I understand The Court's order.

19. With respect to the phone serial number, I declare that I produced the phone in my possession. I also respectfully remind The Court that I have consistently disputed that the phone was my personal phone and not EVEN property. To the extent EVEN now claims a serial-number discrepancy, I cannot speak to but maintain that I did produce my personal phone, did not delete data, and did not act in bad faith.

20. I reject any allegations and narratives by EVEN Defendants regarding the phone and the search conducted by EVEN's vendor. However, I did not knowingly produce a substitute device to mislead the Court, and I did not withhold another phone responsive to the Court's order. I produced the phone in my possession and provided the information necessary to unlock it, as ordered.

21. I cannot speak to EVENs claim that the phone contains "low data", I swear under penalty of perjury that I did not delete any data from the phone after the Court's preservation or device-production orders were put in place. I have maintained since September 2025 that the phone was my personal phone and did not belong to EVEN.

22. I produced the phone in my possession and provided the unlock information as ordered. I am not a forensic expert and cannot speculate regarding any technical issues with the device, extraction or the vendor's process. I maintain that I did not delete data from the phone after the Court's orders were entered.

23. I do not know why the EVEN defendants claim that the phone contains "almost no data". I cannot determine whether the vendor's observation or opinion on what constitutes as

"almost no data", application access limitations, extraction method, settings, encryptions, or some other technical issue.

24. With respect to the laptop, I do not have the laptop and therefore cannot confirm the precise last date of physical use through device logs.

25. Based on my best recollection, I affirm I last used the laptop on or about May 5, 2026. To my knowledge, I reaffirm that I last possessed the laptop on May 8, 2026. I have eliminated May 6 and May 7 as dates of use to the best of my recollection. Because the laptop is missing, I cannot verify the exact last physical-use date with certainty.

26. Attached as Exhibit "A" are records presently available to me concerning my communications with Stanilus, the driver. text-message screenshots, contact/call screenshots, and phone records reflecting communications with Stanilus on May 8, May 11, and May 24, 2026.

27. With respect to the Court's request for an Uber receipt and Uber trip map, I do not have an Uber receipt or Uber map to provide because the ride was not completed through the Uber platform. Upon arrival, Stanilus and I negotiated a direct price that was lower than the amount Uber initially quoted, and I paid him directly. See the record of the May 8, 2026, direct payment to Stanilus annexed hereto as Exhibit "B."

28. Upon information and belief, Uber does not provide a completed-trip receipt, completed-trip route map, or completed-trip record for a ride that was cancelled or not completed through the Uber platform. I have therefore provided the records that are presently available to me: the direct payment record, text-message communications, contact/call screenshots, and call-log records.

29. The available communication records show that I communicated with Stanilus on May 8, 2026, including messages stating "Just need 5 mins and I'll come right out" and "Coming." The records also show that I contacted Stanilus again on May 9, 2026, asking, "Hey bro Did you find it?" The records further show communications with Stanilus on May 11, 2026 and May 24, 2026, including a May 24 incoming call and text-message communication. These records support my prior statement that I attempted to follow up with Stanilus regarding the missing laptop.

30. I returned to the Washington, D.C./Maryland/Virginia area on Thursday, May 28, 2026 at approximately 6:00 a.m. to continue searching for the laptop and to follow up with police. That same day, I attempted to turn in the phone to USMS at approximately 4:45 p.m., but was denied, with the Marshals citing unavailability. USMS Deputy Smith later told me at the Greenbelt courthouse that he did not know why that occurred because the USMS office is typically available until 5:30 p.m.

31. I respectfully must correct the record regarding my availability during the week of May 11, 2026. I did not rely solely on medical restrictions. In my April 30 filing, I informed the Court that I was dealing with possible travel related to a death in the family/bereavement, urgent personal matters, and relocation connected to my career. Those circumstances affected my availability.

32. I respectfully must correct the characterization of my May 8, 2026 airport travel and my medical restrictions as contradictions. They were not the same circumstances. My medical restrictions did not mean that I was physically incapable of any movement or any

travel under any circumstances. They meant that prolonged travel, especially without accommodations, created medical risk and required planning, assistance, and limitations.

33. I also respectfully offer to clarify my use of the words "rushed" or "made a run" in describing my airport travel. I did not mean that I sprinted, ran without limitation, or was medically unrestricted. I meant that I made my way as quickly as I could under the circumstances and within the physical condition I was in at the time. Those words were colloquial descriptions of urgency, not a medical statement about my speed, mobility, pain level, or lack of need for assistance.

34. I swear that due to my medical restrictions, when traveling by air, I have consistently used ADA/special assistance at airports, including wheelchair or mobility assistance when needed. I have documentation dating back to 2025 showing my use of special travel assistance (See Exhibit "C"). I also wear a protective spinal harness during extensive travel, strenuous activity or as needed, including on May 8, 2026.

35. Airport travel with requested ADA/special assistance is materially different from being required to travel by Uber or other ground transportation for nearly four hours without appropriate medical or mobility accommodation, or being required to use a train station or route that does not provide the assistance I required.

36. I offer clarification to The Court, as evidence in Dkt 201, I previously raised travel logistics and accommodation concerns with the Court. On February 5, 2026, I requested a conference to address logistics and accommodation. I also raised these issues in later filings (Dkts. 199, 229, 238, 244, and 249.) I respectfully maintain that the travel proposed for White Plains were distinct medical and logistical burdens.

37. Specifically, the travel related to White Plains involved use of the New Rochelle Amtrak station. Based on Amtrak's own website/app, New Rochelle, New York does not provide in-station assistance. I have provided a screenshot showing Amtrak's notice that "in-station assistance is not available at New Rochelle, New York." That is not comparable to airport travel with requested ADA or wheelchair assistance. (See Exhibit "D").

38. For context and correlation to further clarify my travel on May 8th (and beyond), I direct the Court to Dkt. 229 "the Court should not have to chaperone Mr. Washington in order for him to comply with its clear orders." I understand the Court has not been satisfied with the delays, but I respectfully submit that I was not seeking to be "chaperoned."

39. To further reconcile misunderstanding with The Court surrounding my travel, at that time I was seeking clarity, logistics, and reasonable accommodation for a medically restricted, long-distance court-ordered appearance involving forensic inspection of personal and company devices.

40. That distinction matters. I do apologize if The Court may have misinterpreted my statement and requests for coordination as unwillingness to comply, rather than legitimate concerns about travel, mobility, medical restrictions, religious observance, device handling, forensic timing, privacy, privilege, and the practical mechanics of appearing approximately 300 miles away (for unspecified amount of hours) and then traveling 300 miles back to my destination, the same day. Neither the Court nor the EVEN Defendants provided a conference or practical accommodation process to address those issues before requiring my appearance in White Plains. I respectfully submit that my requests for logistical clarity and accommodation was not obstruction or defiance or bad faith.

41. For further clarification surrounding my travel, this is why I requested a conference on February 5, 2026, to address logistics and accommodations to avoid confusion such as the current misunderstanding between the Court and myself. See Dkt. 201.My request was not an effort to avoid compliance; it was an effort to determine how compliance could occur safely, practically, and within the scope of the Court's orders.

42. I also affirm that attempting to continue my life, address medical needs, attend to bereavement and family obligations, relocation for professional opportunities and employment is not intended to be contradictory or in bad faith. To my knowledge, this matter is a civil litigation concerning copyright and trademark claims. My personal life, professional career, medical circumstances, and ordinary movements are not intentional misconduct.

43. To the best of my knowledge, The Court has ordered compliance while continuing sanctions, but my ability to comply is limited by facts outside my control: the laptop is missing; I do not have the laptop to produce; I produced the phone in my possession; I provided the information necessary to unlock the device; I provided four additional codes when additional access was demanded (which was I believe to be in violation of the Court order); I offered to appear in person to troubleshoot; I physically appeared at the courthouse to resolve any issues; and USMS declined to see me.

44. I do not know what further act I can perform regarding the phone because I produced the phone in my possession, provided the device unlock information, provided four additional codes known to me, offered to appear in person to troubleshoot, physically

appeared at the courthouse, and was declined by USMS. The EVEN vendor accessed everything they previously claimed was not accessible.

45. I respectfully maintain that I have not acted in bad faith. I have attempted to comply while preserving objections to scope, privacy, privilege, burden, proportionality, constitutional protections, and feasibility. I will continue to comply with any clear directive of the Court to the best of my ability.

46. II declare under the penalty of perjury, that the foregoing is true and correct. Executed on this 3rd$^t$ Day of June 2026.

Dated: June 3, 2026

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: 06|03      , 2026

     I declare under the penalty of perjury, that the foregoing is true and correct.  Executed on this 3rd Day of June 2026.

**Signature:**

Darryl Damien Washington
Date: 06/3/26

<strong>ACKNOWLEDGMENT OF NOTARY PUBLIC</strong>

STATE OF Maryland
COUNTY OF Prince George's

On this 3rd day of     June     , 2026, before me, Jesus Guadalupe Martinez ,
Appeared Darryl Damien Washington who proved to me through government-issued photo identification to be the above-named person, in my presence executed the foregoing instrument and acknowledged that he executed the same as his free act and deed.

Notary Public's Signature
Jesus Guadalupe Martinez
Notary Public Print Name

My Commission Expires: January 28, 2030

> JESUS GUADALUPE MARTINEZ
> NOTARY PUBLIC
> ANNE ARUNDEL COUNTY COUNTY
> MARYLAND
> MY COMMISSION EXPIRES JANUARY 28, 2030

# EXHIBIT A



| | Stan Uber | May 24, 2026 | 9:22 pm | 3 mins | | Network | |
| Stan Uber | May 11, 2026 | 5:05 pm | 5 mins | | Network | |
| Stan Uber | May 08, 2026 | 3:51 pm | 2 mins | | Network | |





**Stan Uber**
↙ ☑ phone

5/24/26



# EXHIBIT B

**UNITED BANK**

Accounts    Self Service    Help & Support



| 05/08/2026 | ZELLE DEBIT ZELLE STAN UBER ZELLE | -$100.00 |
| 05/07/2026 | POS SIGNATURE PURCH MERCHANT PURCHASE TERMINAL UNITED UNITED CO TX XXXXXXXXXXXX6 | |

# EXHIBIT C

Case 1:24-cv-06785-JGLC     Document 300-1     Filed 06/04/26     Page 21 of 23



---

## Your special service request
1 message

---

**American Airlines** <no-reply@info.email.aa.com>                    Fri, Sep 5, 2025 at 2:00 PM



# Special service request

Confirmation code: `QTFDQG`

 **Wheelchair assistance**

We added your request for wheelchair service.

Please arrive at the airport at least 90 minutes before departure and head to the check-in lobby.

| Flight: | Passenger: |
|---|---|
| **ORD - DCA**<br>AA 2999<br>September 5, 2025 | **Darryl Washington** |
| **DCA - MIA**<br>AA 1533<br>September 5, 2025 | **Darryl Washington** |
| **MIA - GUA**<br>AA 1603<br>September 6, 2025 | **Darryl Washington** |

Learn more about Airline Passengers with Disabilities Bill of Rights

Thank you for choosing American Airlines.

Contact us
Privacy policy

**Download the American app**

# EXHIBIT D

