

Ellenoff Grossman & Schole LLP

1345 AVENUE OF THE AMERICAS – 11TH FLOOR
NEW YORK, NY 10105
TELEPHONE: (212) 370-1300
FACSIMILE: (212) 370-7889
www.egsllp.com

June 11, 2026

**Via ECF**

Honorable Jessica G. L. Clarke
300 Quarropas Street, Courtroom 320
White Plains, NY 10601
ClarkeNYSDChambers@nysd.uscourts.gov

Re:     *Babygrande Global, Inc. v. Rodriguez, et al.*, No. 1:24-cv-06785-JGLC; Response to the Declaration of Damien "DDot" Washington (Dkt. 300-1) and the Court's Order Requesting EVEN's Input On Next Steps (Dkt. 303)

Dear Judge Clarke:

We write on behalf of the EVEN Defendants, pursuant to the Court's June 8, 2026 Order (Dkt. 303), in response to the declaration of Damien "DDot" Washington filed June 4, 2026 (Dkt. 300-1, "Washington Decl."). Alongside this letter response, we submit the declaration of Lauren Lafko, the forensic examiner from Consilio who imaged and searched the device Mr. Washington produced to the U.S. Marshals Service ("USMS"), dated June 11, 2026 ("Lafko Decl.") and the declaration of Enrique "Mag" Rodriguez, dated June 11, 2026 ("Rodriguez Decl."). Those declarations directly refute the central factual assertions of Mr. Washington's June 4, 2026 "Supplemental" Declaration.

Mr. Washington has made a mockery of these proceedings. His Declaration is just another example of the falsehoods that have permeated his submissions concerning the EVEN purchased devices. The information set forth below and described in the Lafko and Rodriguez declarations is presented to assist the Court in appreciating how contemptuous his submission is, despite the fact that he is no longer appearing *pro se* and that the declaration was made under oath. This should be the last straw.

I.      **The Phone Mr. Washington Produced Is Not The Phone He Was Ordered To Produce.**

The device Mr. Washington delivered to the USMS bears serial number JXJC56GQ2K, issued by Apple in 2022 which demonstrates it is a completely different device than the one purchased for him by EVEN bearing the serial number HMQF4NVTW4, issued by Apple in 2023. (*See* Lafko Decl. ¶¶ 17, 24 and Ex. 3, at 4; Rodriguez Decl. ¶¶ 6-9 and Exs. B and C). Indeed, the device he provided to the USMS does not even have a phone number associated with it. (*See* Lafko Decl. ¶ 17 and Ex. 3, at 4). As Mr. Rodriguez's declaration establishes, Apple's own coverage-verification website reports that the device Mr. Washington produced to the USMS was purchased – by someone – on December 27, 2022. That was nearly eleven months before EVEN bought him the iPhone at issue on November 13, 2023. (Rodriguez Decl. ¶¶ 3, 6-9 and Exs. A, B, and C). Moreover, the email address for Mr. Washington shown on the phone is a different email address

Hon. Jessica G. L. Clarke
June 11, 2026
Page 2

than the one he frequently used while he was an employee of, or an independent contractor with, EVEN. (*Id.* ¶ 10). The two devices are clearly different.

In his Declaration, Mr. Washington claims a number of times that that he turned over "the phone in my possession." (Dkt 300-1, ¶¶ 7, 15, 19, 20, 22). He also claims that he "cannot speak to" the serial-number discrepancy (*id.* ¶ 19), and that he did not "withhold another phone responsive to the Court's order." (*Id.* ¶ 20). These statements are categorically false, and beg the question: where is the actual iPhone EVEN purchased for him? Only Mr. Washington knows. As one example, if the phone is the only one in his possession, why does it not contain any files or information reflecting the heavily redacted communications he claims to have had with his Uber driver or the Dulles Airport police about the "lost" laptop? (*See* Dkt. 300-1, at Ex. A). That is because those communications must have been conducted from a different phone. Simply put, Mr. Washington cannot produce the wrong phone and then disclaim any knowledge of why it is the wrong phone.

II.     **The Phone Was Reset On March 18th, The Day Before Mr. Washington Was Due To Bring It To While Plains, And Contains Virtually No Content.**

While the phone Mr. Washington turned over was initially sold by Apple to someone (unknown) in 2022, the Lafko declaration shows that the produced device contained less than one gigabyte of data, and was last set up or factory-reset on **March 18, 2026 at 2:34 AM**. (Lafko Decl. ¶¶ 15-17; *id.* Ex. 4, and Ex. 5, at 1, lines 116-172). The Court will note that this was a mere eleven hours after the Court denied Mr. Washington's request to delay (again) the forensic imaging that was scheduled for the next day on March 19th. (*See* Dkt. 244, March 17, 2026 "Memo Endorsed" Order, transmitted to the parties via ECF at 3:43 PM, denying further delay of the March 19th imaging in White Plains). Therefore, anything that was on the phone before March 18th has been wiped out forever and cannot be recovered, unless Mr. Washington backed the data up somewhere else, such as his iCloud account or on some other device. (Lafko Decl. ¶ 17). Notably, Mr. Washington did have the cloud backup feature turned on. (Lafko Decl. ¶¶ 17, 25 and Ex. 3, at 4, line 38).

Contrary to Mr. Washington's claim that the phone was his "personal phone" since 2023, the imaging exercise performed by Consilio shows the device had essentially no usage, had no phone number associated with it, that it was set up on the eve of the prior-ordered court appearance at which Mr. Washington failed to appear, was wiped clean, and that only a small number of files were added on March 18th, May 28th, and May 29th—the latter being the day he brought the phone to the courthouse. (*See* Lafko Decl. ¶¶ 17-18, and Exs. 3 and 5). A genuine, daily-use personal phone is not content-less. Likewise, Mr. Washington swears that he "did not delete any data" (Dkt. 300-1 ¶¶ 19, 21, 22) and has no other phone, while in the same breath claiming he "cannot speak to" and is "not a forensic expert" regarding the very lack of files that only deletion or a factory reset can explain. (*Id.* ¶¶ 19, 21, 22, 23). He cannot simultaneously assert that nothing was deleted, on the one hand, and disclaim all knowledge of why nothing is there, on the other. This is yet another transparent attempt to deceive the Court.

Hon. Jessica G. L. Clarke
June 11, 2026
Page 3

As to the serial-number mismatch:  he "cannot speak to" it (Dkt. 300-1 ¶ 19); as to the device containing "low data": he "cannot speak to" it (*id.* ¶ 21); and as to the device being nearly empty: he "do[es] not know why."  (*Id.* ¶ 23).  These are all false – only he can "speak to" these things.

Indeed, while there were 316 unique physical files on the phone, the only user-created content of any kind on the phone were nine (9) physical files consisting of four (4) physical contact entries, two (2) notes, and a few downloaded images.  (Lafko Decl. ¶¶ 18-22, 27-28).  The analysis shows that the contacts and two notes on the phone were created on May 28, 2026, the day before the device was delivered to the USMS, and were clearly added to "troll" the Court and the parties.  (Lafko Decl. ¶¶ 18-20 and Ex. 5).

First, the contacts shown are, "Mag Rodriguez," "Stove" [God Cooks] (as well as a duplicate entry with Cooks' phone number showing it as part of a single blank text "chat" message), and "Chuck Wilson Babygrande"— which were added manually to the phone on May 28th, and no other contacts other than Mr. Washington's own email address, which is not a physical file.  (Lafko Decl. ¶¶ 20, 27-28, and Exs. 5 and 6).  That can hardly be the entirety of Mr. Washington's universe of contacts.

Second, the two notes, also added on May 28th, consist of one vulgar reference to Mr. Washington's anatomy and one graphically disgusting and gratuitous personal attack on Mr. Rodriguez, not repeated here, but shown in the exhibits to Ms. Lafko's declaration.  (*See* Lafko Decl. ¶ 18 and Ex. 5, lines 192-193 and 202-203).

The remainder of the files on the phone include pre-populated calendar entries and pre-loaded picture files that are emblematic of a factory reset.  (Lafko Decl. ¶¶ 17, 27).  Thus, the 316 physical files on the phone contain virtually no content— no emails, no phone calls, and no text messages (other than the one empty chat addressed to Cooks shown in the contacts report with no actual message).  This all proves unequivocally that Mr. Washington's Declaration is full of falsities.  He is in contempt.

It is long past due for there to be serious consequences for Mr. Washington.  Putting aside the harm to EVEN (and Babygrande, who also claims it wants the missing evidence), the integrity and efficacy of the Court's rulings are being tested.  As noted above, this should be the last straw.

### III.    Mr. Washington Did Not Comply With The Court's Orders To Provide Passwords and Full Access.

Mr. Washington asserts that the Court's orders required only "the information necessary to unlock the device," not application passcodes, and that contempt "should be immediately rescinded." (Dkt. 300-1, ¶¶ 8-10, 15, 43-44).  That is not what the Court ordered.  (*See* Dkt 285, at 3, (ordering him to produce "any information needed to unlock the device"); *id.* at 4 ("information needed to open the devices"); *see also* Dkts. 294, 295, 298, all using similar language).  Producing a wiped device, barely used after the reset, together with passcodes that did not open the messaging application is not in compliance with any of the Orders issued by the Court

Hon. Jessica G. L. Clarke
June 11, 2026
Page 4

to provide the actual device purchased by EVEN, without alteration, for imaging and search. Again, this is the very definition of "contempt."[1]

## IV.    The Declaration Does Not Provide The Laptop Information Ordered By The Court.

The Court ordered Mr. Washington to account, under oath, for the laptop he claims is missing. (*See* Dkts. 294, 298).  The declaration does not do so.  It says only that he does not have the laptop (Dkt. 300-1, ¶ 24), that he "last used the laptop on or about May 5, 2026," and "last possessed the laptop on May 8, 2026."  (*Id.* ¶ 25).  It then pivots to several paragraphs about text messages with a rideshare driver named Stanilus and a tall tale about paying the driver the sum of $100 "under the table" as his bizarre explanation for why he has no Uber receipt (or why the communications attached as his Ex. A were not on his phone).  He also produced no records of his travel – where he was going to or from, and why he was at the airport to begin with on a day he claimed under oath that his purported medical note directed that he was not able to travel more than 30 minutes. (*Id.* ¶¶ 26–29).

Nowhere does Mr. Washington provide the details the Court actually ordered him to provide: he neither explains how, when, or where the laptop was lost or stolen, nor provides any account of his preservation efforts under the Court's standing orders.  Instead, he focuses on explaining why he has no Uber receipt.  But even that sideshow does not hold up.  Contrary to Mr. Washington's suggestion (*id.* ¶¶ 27-28), canceled and uncompleted Uber trips and their trip details remain viewable within the Uber app— a fact verifiable by anyone with the application installed.  Mr. Washington's representations are not credible.  Again, he is in contempt.

## V.    The Declaration Does Not Address The Contradictions The Court Directed Mr. Washington To Explain.

The Court's order directed Mr. Washington to explain specific, identified contradictions in his prior representations.  (*See* Dkt. 298, at 4-5).  The Declaration does not address them.

The only identified contradiction Mr. Washington actually addresses concern his medical issues, but he again completely contradicts himself.  This is the clearest example of Mr. Washington telling the Court one thing for as long as it served him, and the opposite once it did not.  From January through April 2026, across at least eleven (11) filings (Dkts. 188, 188-1, 189, 195, 218, 219, 220, 224, 227, 235, 240, 242, 262, 262-1), Mr. Washington repeatedly represented (under penalty of perjury and with attached purported medical notes) that his medical condition made travel to New York "impossible."  Those representations are what he claimed excused his failure to appear when directed on February 25, March 19, and April 14, 2026.  Now, in Dkt. 300-1, he says those same restrictions "did not mean that [he] was physically incapable of any…travel."  Just two examples suffice to show how duplicitous he is:

---

[1] Mr. Washington asserts that EVEN did not notify his counsel in advance of the June 1, 2026 imaging.  (Dkt. 300-1 ¶ 12).  That is false.  Counsel for the EVEN Defendants emailed Mr. Guilford on Friday, May 29, 2026 at approximately 3:00 p.m. expressly confirming that the vendor would be at the courthouse on Monday, June 1, 2026 and asking that he ensure both he and his client were available and reachable should any additional information be needed to conduct the imaging.  A copy of the May 29th email, with its full chain, is attached hereto as Ex. A.

Hon. Jessica G. L. Clarke
June 11, 2026
Page 5

| Then | Now |
|---|---|
| January 22, 2026 (Dkts. 188 and 188-1): "my physician has directed that I abstain from professional duties and travel for a period of approximately three weeks…This medical directive independently precludes travel to New York during that period." | June 4, 2026 (Dkt. 300-1): "My medical restrictions did not mean that I was physically incapable of any movement or any travel under any circumstances." (¶ 32). |
| April 14, 2026 (Dkts. 262 and 262-1): "[Washington] remains unable to travel from Maryland due to medical restrictions…compliance by physical appearance is medically and physically impossible at this time." | June 4, 2026 (Dkt. 300-1): Without stating from where he was again travelling or what mode of transportation he used, "I returned to the Washington, D.C./ Maryland/ Virginia area on Thursday, May 28, 2026 at approximately 6:00 a.m." (¶ 30). |

Moreover, the suspect medical note Mr. Washington produced restricted travel of "more than 30 minutes" in duration through May 13, 2026. (Dkt. 227, Ex. A; Dkt. 240). Any flight he could have taken on May 8th and May 9th would have clearly exceeded that durational limit, as would have a $100 Uber ride. Yet he invoked those very medical notes to avoid three courthouse appearances while traveling by air at will. He even stated that a train would not do because "my doctors have advised that train is not suitable to my needs which may require access [to] medical attention while I am still under medical treatment." (Dkt. 227, Ex. B (Feb. 18, 2026 email)). And his new inclusion of a screenshot from the Amtrak New Rochelle website is not compelling – had he been willing to actually take the train as he was ordered to, an accommodation easily could have been made. His non-compliance is willful, not innocent. He has exhibited no amount of "good faith" towards the Court despite his claims otherwise. Rather, he has consistently engaged in proactive efforts to avoid the turnover of the devices. His claim that both devices are now not available, whether because the laptop was lost or he does not know why the phone contained so few files, does not pass the "smell" test. He either still has the actual devices or has backed up their content somewhere else.

There is no "clarification" needed and there has been no "misunderstanding" by the Court, as Mr. Washington repeatedly suggests. Instead, his most recent Declaration, as well as his prior ones, merely exhibit the desperate behavior of someone who has been caught in their lies.

## VI.    Remedies For Contempt.

The Court has been extremely patient with Mr. Washington; more so than he deserves. EVEN brought this issue to the Court's attention in September 2025, over nine (9) months ago, and Mr. Washington's refusal to comply with the Court's numerous orders has impeded progress on depositions and the completion of discovery. His Declaration establishes neither compliance nor good faith and provides no basis to rescind the Court's many prior contempt findings. Mr. Washington remains in contempt of the Court's orders and has not yet produced either the phone or the laptop as required.

Hon. Jessica G. L. Clarke
June 11, 2026
Page 6

The Court should not believe any of his latest excuses or claimed ignorance about what happened to the devices.  As a threshold matter, the Court should order him to: (1) immediately provide Consilio with access to his cloud account and any separate passcodes to his messaging, email, phone and Uber applications without alteration; and (2) appear in White Plains (now that there is no doubt he can travel by air), at his own expense, for an examination under oath by the Court and counsel about the true location of the devices at issue and whether any of the files on them were backed up to another device or to storage in the cloud, with all necessary access credentials, without limitation, so that the missing files can be retrieved by Consilio if that is still possible.

In addition, the Court should: (3) accelerate the fines it previously ordered; (4) order Mr. Washington to provide his physical addresses so the USMS can search his premises for the missing devices; (5) have the USMS detain Mr. Washington until he produces the actual devices or backed up files; and (6) order Mr. Washington to pay all of the bills of Consilio and counsel for his unjustified missed appearances and the fruitless exercise of imaging and conducting a forensic examination of the wrong phone.

In the meantime, as to the rest of discovery, the Court should permit depositions to proceed without the evidence from the two devices, and if any documents are later recovered and there is a need to re-open any of the depositions, order that all such costs caused by Mr. Washington's contempt should be borne by him.

The EVEN Defendants never imagined these issues would still be ripe in June 2026 when they first raised them in September 2025.  The Court should not only stand by its prior orders, but, respectfully, it should now enforce them with the appropriate amount of rigor to uphold the Court's authority and the integrity of its orders.


Respectfully submitted,

David Leichtman
_____
David Leichtman