UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

BABYGRANDE GLOBAL, INC.,                          :
                                                  :
                                                  :
         *Plaintiff,*                             :        Index No.: 1:24-cv-6785-JGLC
                                                  :
                                                  :
         -against-                                :
                                                  :
                                                  :
EVEN LABS INC.; ENRIQUE "MAG" RODRIGUEZ;          :        **DECLARATION OF**
and DAMIEN "DDOT" WASHINGTON,                     :        **LAUREN LAFKO**
                                                  :        **REGARDING JUNE 1, 2026**
                                                  :        **DEVICE IMAGING IN**
                                                  :        **GREENBELT, MARYLAND**
         *Defendants.*                            :
                                                  :
                                                  :

------------------------------------------------------------------------x

I, Lauren Lafko, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a Senior Consultant in the Digital Forensics & Expert Services department at Consilio LLC.  I have held this position since February 2022.

2.      I respectfully submit this declaration pursuant to the Court Orders dated January 16, 2026 and May 11, 2026, which directs the EVEN Defendants' forensic vendor to "file an affidavit confirming that it followed the procedures and protocols" ordered by the Court.  (Dkts. 183, 285).  The matters set forth herein are based on my personal knowledge and on records made and maintained by Consilio in the ordinary course of its work, and if called as a witness I could and would testify competently to them.

3.      Consilio was retained by counsel for the EVEN Defendants, Leichtman Law PLLC, and then Ellenoff Grossman & Schole LLP ("EGS") to conduct a forensic imaging and search of an Apple iPhone 14 cell phone and a laptop in the possession of Damien "DDot" Washington.

4.      Forensic imaging is the process of creating a forensic copy of the data stored on a device so that the data can be preserved and examined without altering the original device.  In

1

imaging the Apple iPhone 14 cell phone in this matter, Consilio used the Cellebrite Universal Forensic Extraction Device "UFED" software with version 7.76 running on a computer laptop to perform an Advanced Logical extraction of the device.

5.       A forensic image of an iPhone 14 can capture a full logical file system of the device. The main categories the forensic image captures include, but are not limited to: contacts; web searches; multimedia; notes; calendar; and system logs.

6.       When forensically imaging a device of this type, the process generally consists of running the Cellebrite UFED software, attaching the cell phone to the collection laptop, entering the device passcode to begin imaging and encrypting the resulting image.  I followed that process in imaging the cell phone in this matter.

7.       The forensic imaging was originally scheduled to take place at the United States Courthouse in White Plains, New York.  A member of Consilio's New York-based team appeared at the White Plains courthouse, prepared to image the devices, on February 25, 2026, March 19, 2026, and again on April 14, 2026.

8.       EGS informed Consilio on April 15, 2026 that the imaging would instead take place at the federal courthouse in Greenbelt, Maryland.  Consilio's Washington, D.C.-based team and I were then assigned to conduct the imaging.

9.        On May 27, 2026, EGS informed us that the laptop had been lost, and would not be available for imaging.  On May 28, 2026, Consilio was asked if someone could be available the following day to go to the courthouse in Greenbelt to image the iPhone the following day, but Consilio did not have a representative available to image the device on Friday, May 29, 2026.  The next day, I confirmed I would travel to Greenbelt on Monday, June 1, 2026, and I understood that all parties had been made aware that the imaging would proceed on that date.

10.     I arrived at the federal courthouse in Greenbelt, Maryland on the morning of June 1, 2026, at approximately 10:55 AM and proceeded to the U.S. Marshals Service ("USMS") office. There, I waited for the device until approximately 11:20 AM eastern time, at which point I then received the device from the U.S. Marshals.

11.     Attached as Exhibit 1 is a document showing the time I arrived and the time I returned the phone back to the Marshals.

12.     As I performed a manual check of the accessibility of the cell phone, I was unable to access the cell phone's messaging application using the passcode(s) I had been provided. For this device, the native messaging application required a passcode (different from the device passcode) to access any messages stored on the iPhone 14. I informed the USMS, who advised me that they had contacted Mr. Washington's counsel, who I was told would obtain the necessary passcode from Mr. Washington.

13.     Typically, prior to imaging we check the capacity (*i.e.*, size of the files, measured in gigabytes) of the device to determine how long the imaging will take. Since we had no access to the device until I was onsite, I first performed a manual sweep for capacity. I immediately observed that the device contained almost no data.

14.     I began the data extraction at 11:35:40 AM (UTC-4) and completed the extraction at 11:36:40 AM (UTC-4). The summary of the extraction created by the Cellebrite Physical Analyzer software showing the extraction start and end time is attached as Exhibit 2 (start and end time highlighted with red boxes for clarity). A true and correct copy of the "Washington iPhone Report" generated by my team at Consilio is attached hereto as Exhibit 3. This report was originally generated as a Microsoft Excel file; each of the tabs has been converted into a PDF combined for ease of review.

15.    Using Consilio's forensic tools, I determined that the device held less than one gigabyte (1 GB) of data, which in my experience, indicates the phone has been recently reset to factory settings, or otherwise has been scarcely used.

16.    During my review, I determined that the device had a recent set-up date—recorded in the com.apple.purplebuddy.plist file, in the value labeled "SetupLastExit"— which was March 18, 2026 at 2:34:57 a.m.  A screenshot of Consilio's record of this data collected from the device showing the set-up date is attached as Exhibit 4, with a red box around SetupLastExit for ease of review.  This value reflects the last date and time on which the device either completed its initial set-up process or was factory reset (the "set-up date").

17.    This set-up date, together with the activity displayed in the device's timeline shown on Exhibits 3 and 5, reflects that the cell phone was either restored to factory settings or set up for the first time that day (March 18, 2026).  Based on my understanding that the serial number (discussed below) indicates the phone was originally sold in 2022 (*See* Declaration of Enrique Rodriguez at ¶¶ 8-9 and Ex. C), my opinion is that the device was reset by the user to factory settings on March 18, 2026.  Resetting the device to factory settings has the effect of wiping all previously loaded content from the device in a manner that the removed files, such as texts, emails and phone calls, cannot be recovered.  In fact, the phone did not have a telephone number associated with it, which I would have expected to see on the Device Info summary located at Ex. 3, page 4, just below the MSISDN row shown on line 19 of Ex. 3, page 4.  I also note that the review indicated that the user had turned on the Cloud Backup and Find my iPhone features.  (*See* Ex. 3, at page 4 ("Device Info"), lines 38-39, highlighted in light blue), and that the last Cloud backup was performed on May 29th at 1:15PM.  (*Id.*, line 23, highlighted in light blue).  The timeline shows that substantially all activity on the device (including the creation of a user account

4

and a series of Internet searches and associated web browser history) occurred on March 18, 2026, within a short period of the recorded set-up time. The full and complete timeline extracted from the cell phone in the Washington iPhone Report is included in Exhibit 3, pages 5-9. Of the 336 items in this timeline, 240 are calendar entries. It is common to have dates the year before and after the date of reset automatically logged as a preset of the calendar application on the device. Attached as Exhibit 5 is an excerpt of the timeline omitting the auto-populated calendar entries and empty columns "Direction" and "Attachments.".

18. User-created content was generated on three days: March 18, 2026, May 28, 2026, and May 29, 2026. On March 18th, the only user-created content was a series of web searches relating to the Philadelphia Eagles. On May 28th, the only user-generated content was: (a) three (3) saved images including a thumbnail from the messaging application, a downloaded image of the Philadelphia Eagles logo, and a screenshot of the homepage of the device (Ex. 5, at lines 189-191); (b) several contacts discussed in detail below (*id.*, lines 194-199); and (c) two notes containing profanities, one of which specifically mentions Mr. Rodriguez. (*Id.*, lines 192-193 and 202-203). The notes were created on May 28th and modified later that day. (*Id.*) On the evening of May 28th and May 29th, the only other user-generated content on the phone was a series of web searches related to the address of the courthouse in Greenbelt. (*Id.*, lines 204-214.).

19. The saved images, contacts, and notes were all created the day before the device was delivered to the USMS. (*See* Ex. 5, lines 189-204).

20. The device contained only five (5) contacts, which included an unidentified phone number with a 929 area code, Mr. Washington's own email address, "Mag Rodriguez," "Stove," and "Chuck Wilson Babygrande." Attached as Exhibit 6 is the contacts excerpt of the Washington iPhone Report omitting the empty columns as noted on the document for ease of review. The

5

document further shows that the unidentified 929 phone number matches the telephone number attached to the contact titled "Stove." Each of these contacts were created on May 28, 2026. (Ex. 5, lines 194-199 and Ex. 6, at lines 3-5).

21. After imaging the device, the USMS received a passcode from Mr. Washington's attorney for the messaging application. The first additional passcode relayed to me did not open the messaging application. The USMS then obtained a second passcode, which also did not open the messaging application. At this point, the Marshal was told by Mr. Washington's counsel that he did not have any other passcodes to try at that time. I was not given any further passcodes to attempt. Neither of the two passcodes I was provided opened the messaging application. (*See also* ¶ 12, above).

22. At no point during my work on June 1, 2026 was I able to access the messaging application on the device; however, I was still able to collect some data. There was a message with "Stove +1929    " but the message itself was blank and did not contain any readable conversation or metadata. (*See* Ex. 3, at page 2 (the "chats" tab of the report); *see also* Ex. 6, at line 1). Without being able to access the messaging application directly on the device or reviewing the cloud backup, there is no way to be sure if this message is the only message data or if there are other hidden messages that could not be collected due to the failure to provide a messaging passcode which may have prevented the messages from being collected in full.

23. I left the USMS office at approximately 12:14 pm. (*See* Ex. 1). The cell phone remained in the possession of the USMS. Before leaving, I informed Ms. Emma Hoffmann of EGS that the imaging was complete and that the cell phone remained with the USMS, and she advised that she would notify Mr. Washington's counsel.

24.     At Ms. Hoffmann's request, I checked the serial number of the cell phone to confirm whether it was the same serial number as the iPhone that EVEN bought for Mr. Washington.  The serial number reflected in the cell phone extraction is JXJC56GQ2K.  (*See* Ex. 3 at 4, lines 10 & 29, highlighted in yellow).  I have since been informed that this serial number does not match the serial number of the device I had understood I would be imaging.  EGS provided my team with an Apple receipt, from which I understood that I would be imaging an Apple iPhone 14 (PRODUCT)RED, 256 GB, bearing serial number HMQF4NVTW4.  (*See* Dkt. 296; Declaration of Enrique Rodrigues at Exs. A and B).

25.     I examined the device's identifying information and provided it to Ms. Hoffmann. The imaged cell phone was identified specifically as an Apple iPhone 14 (model A2649; model identifier "iPhone 14,7"; model number D27AP) running iOS version 26.2.1.  (*See* Ex. 3, at 4). The extracted data reflected the Apple ID attached to the email address "damien@connecteddotsmgmt.com" and the owner name as "DDOT's iPhone." (*Id.*, lines 21 and 32, respectively).  The extraction indicated that iCloud backup, Find My iPhone, and Location Services were enabled and that the device was encrypted.  (*See id.*, lines 36, 38-39).

26.     Consilio applied the search terms and privilege protocol provided to it by EGS, consistent with the search protocol previously adopted by the Court.  (Dkt. 183).  The search was run on the processed data on June 4, 2026.

27.     At a high level, the device contains 316 unique physical files.[1]  We applied the search terms to these 316 documents.  Attached as Exhibit 8 is a breakdown of the search results by file type.  Of these 316 documents, 180 documents were pre-loaded pictures, constituting system application icons and emoticons, 120 were auto-populated calendar entries (such as

---

[1] While the timeline at Ex. 3 has 336 entries, not all of them reflect unique physical files because some of the files were modified.

holidays), six were marginal files (*i.e.*, files with no content), four were contacts (reflecting rows 1 and 3-5 on Ex. 6)[2], three were .heic image files (as described above in ¶ 18), two were note files (as described above in ¶ 18), and one was a container file (a zip of all the files).

28.     The search results hit upon only two (2) unique files.  Attached here as Exhibit 9 is a true and correct copy of the search results generated by Consilio.  Of the search terms applied, results were returned only on the terms "929-▮▮▮▮▮," "Babygrande," "Chuck," "Chuck Wilson," "Stove," and "Wilson."  (*See* Ex. 9, at 1 & 3).  These results were all found within the contacts on the phone.  (*See* Ex. 6).

29.     Consilio delivered an initial report of the search results and the cell phone information to EGS on June 4, 2026.  This report became Exhibit 9 to this declaration (the search hit report).  Consilio also generated a forensic report for the device, which contains the single empty text message, the device's contacts, the two notes, the device information, and a timeline of the available cell phone's data.  These reports constitute the Washington iPhone Report, as depicted in full in Exhibit 3 and excerpted in Exhibits 5, 6, and 7.

30.     In performing the imaging, processing, and search described above, Consilio followed the procedures and protocols ordered by the Court, including the Court-approved search terms and privilege protocol incorporated at Dkt. 183, and the procedures set forth in the Court's orders at Dkts. 285, 295, and 298.

---

[2] Row 2 on Ex. 6, consisting of Mr. Washington's email address, is not a physical file.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 11, 2026

Baltimore, Maryland

_Lauren Lafko_
_____

Lauren Lafko

Senior Consultant, Consilio, Inc.

Digital Forensics & Expert Services