UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BABYGRANDE GLOBAL, INC.,

                    Plaintiff,

        -against-

ENRIQUE MAG RODRIGUEZ; EVEN LABS INC.;
DAMIEN DDOT WASHINGTON,

                    Defendants.

24-CV-6785 (JGLC)

**ORDER**

JESSICA G. L. CLARKE, United States District Judge:

The Court has reviewed the recent submissions from the EVEN Defendants and Damien "DDot" Washington pertaining to the parties' ongoing discovery dispute and Mr. Washington's contempt of this Court's orders. Because not all of these documents currently appear on the docket, the Court notes them here: The EVEN Defendants filed a letter, along with multiple declarations and exhibits, on the docket. ECF Nos. 304–09. Mr. Washington emailed the Court the attached letter and exhibits after his counsel withdrew. *See* ECF No. 312–13. He copied the Court's Pro Se Intake Unit, counsel for Plaintiff, and one of the EVEN Defendants' attorneys. He did not copy the EVEN Defendants' other two attorneys of record. Because these documents have not yet been docketed, the Court attaches them to this Order.

Having reviewed the parties' submissions, the Court ORDERS the following:

(1) The parties shall proceed with depositions. Any deposition can be reopened if additional discovery that was previously ordered to be produced is produced at a later date.

(2) At this juncture, Mr. Washington continues to be in contempt: he has not produced the phone that he was ordered to produced—the phone that was provided to him by EVEN. *See* ECF No. 285 at 3. Accordingly, fines will continue to accrue unless and

until Mr. Washington provides the phone (that EVEN provided him) to the U.S. Marshals as previously instructed. *See* ECF No. 285.

(3) With regard to the laptop, the Court remains skeptical of Mr. Washington's excuse that he lost the laptop—including that he did not initially provide proof of his canceled Uber, that he provided redacted messages, and that the timing of his story is suspicious. *See, e.g.*, ECF No. 300-1 at 14–19. As such, the Court agrees with the EVEN Defendants that a hearing, in which Mr. Washington will be questioned under oath, is appropriate. *See* ECF No. 304 at 6. Counsel for all parties and Mr. Washington are therefore ordered to appear at an in-person hearing on **September 21, 2026, at 2:30 p.m.** in Courtroom 320 of the Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601-4150. Mr. Washington shall arrange and pay for his own travel. Any party seeking an adjournment must do so no later than **September 7, 2026, at 2:30 p.m.** The parties should also be prepared to discuss the EVEN Defendants' motion for case-terminating sanctions. *See* ECF No. 252.

Finally, Mr. Washington's prior request to stay the accrual of sanctions and fines—made through counsel, before his counsel withdrew—is denied. *See* ECF No. 292. The Clerk of Court is respectfully directed to terminate ECF No. 292.

Dated:  June 29, 2026
      White Plains, New York

SO ORDERED.

_____
JESSICA G. L. CLARKE
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

June 26, 2026
Honorable Jessica G. L. Clarke
300 Quarropas Street
White Plains, NY 10601

RE: **Babygrande Global, Inc. v. Rodriguez, et al., No. 1:24-cv-06785-JGLC, Damien DDot Washington's Last Response To EVEN's Lies**

Dear Judge Clarke:

For the last 12 months, I've repeatedly objected and maintained that I am not a proper party to this case. However, despite my requests for fairness and due process, I have still, to the best of my ability, complied with the orders of this Court, whether against my will or under protest.

I've been subjected to defamatory and malicious attacks on my character, my religion, my health, my livelihood, and my reputation, while this Court has done absolutely nothing to intervene or mitigate the gamesmanship, harassment, and outright lies put forth by EVEN Defendants, and now contemplates punishing me for EVEN's antics and unprovable hunches derailing these proceedings.

I've been told on many occasions to dull my senses, forego my instincts and comply.

Well, I've complied to the fullest extent possible. However, I refuse to be complicit in framing myself for the sake of a "plot twist" in yet another tall tale from EVEN. I've been ordered to "respond" to the latest fictitious allegations by EVEN, Mag Rodriguez, and their kangaroo court counsel, so, as a matter of compliance, I will do exactly that.

## II. EVEN SHOULD BE REQUIRED TO PROVIDE PROOF BEFORE I AM REQUIRED TO ANSWER EVERY NEW THEORY

I respectfully ask the Court to clarify whether it intends to allow every ridiculous, unsupported claim by EVEN to be dignified with a response. I further respectfully ask the Court whether it will ever require any substantial proof or actual evidence to be provided by EVEN for every theory they conjure up.

To date, I've not seen any facts, proof, or a microscopic morsel of evidence for these newly hallucinogenic allegations or any previous fabrications levied against me by EVEN Defendants.

But I get it. I understand. Some of my posture and actions may have resulted in dissatisfaction by The Court.

I did not appear in court when asked because I was unable to; that makes me difficult. I dared to preserve my rights against invasion of my privacy; that makes me a malcontent. I've asked for fairness and impartiality; that makes me arrogant. I've been held in contempt, and that makes me defiant.

That does not make me a criminal, that does not make me guilty of baseless allegations, and that does not make every fanciful accusation a fact, let alone worthy of a response.

### III. THE UBER ISSUE DOES NOT PROVE CONTEMPT, DELETION, OR MISSING BABYGRANDE ESI

EVEN now attempts to use the Uber issue as a credibility attack, but it does not prove contempt, deletion, or missing Babygrande ESI.

I previously stated that I did not have a completed Uber receipt or completed Uber route map because the ride was not completed through Uber because that's what occurred. After EVEN asserted that I "withheld" the canceled trips receipt and they may remain visible in the Uber application, I located it and now produce a canceled-trip entry in good faith. A copy of that canceled-trip entry is attached as Exhibit A.

That supplemental production does not contradict my prior statement that there was no completed Uber receipt, no completed Uber-platform trip, and no completed Uber route map. The fact remains that Uber did not provide a copy of a "cancelled trip" receipt to any connected email, as is its normal practice.

It also confirms that EVEN is attempting to turn a collateral travel issue into a sanctions theory, even though it has no bearing on whether the Court-approved phone search recovered substantive Babygrande-related ESI.

### IV. MY POSITION HAS BEEN CONSISTENT, EVEN HAS HAD AN ENDLESS SAGA OF SHIFTING

My position since this dispute arose has been consistent and unequivocally transparent. Both while Pro Se and through previous Counsel, I've disputed the many lies told to the Court by EVEN about my employment relationship with EVEN and Mag Rodriguez. I've disputed any misgivings EVEN has made to the Court about my possession of "relevant ESI, case evidence, files, emails documentation" and other discovery-related matters.

I've disputed every misrepresentation EVEN has made to the Court regarding devices in my possession. Whereas EVEN on the other hand, has taken this case on a wild goose chase about "extortion" plots, exaggerated discovery issues, Plaintiff and witness relationships, bitter employment disputes and whatever other straws they can grasp.

Since the outset of these proceedings, EVEN has not planted its foot on one consistent position.

In fact, the only thing EVEN defendants have been consistent in is being egregiously inconsistent.

### V. I COMPLIED WITH THE COURT'S ORDER TO THE EXTENT PHYSICALLY POSSIBLE

The Court ordered me to appear at the District Court in Greenbelt, Maryland, and turn over my personal phone, along with the passcode to unlock my personal phone, and the laptop EVEN claims is its property.

On or about May 28, 2026, I attempted to comply with the order as to my personal phone and was refused by the U.S. Marshals for reasons unknown. On or about May 29, 2026, I did comply with the Court's order by turning over my personal phone to the U.S. Marshals. Through counsel, I provided the passcode to unlock my personal phone. The Court acknowledged this in Dkt. 295.

I turned in the phone in my possession. I provided the passcode. Additional codes were provided through counsel when requested despite that not being a part of the Court approved search. I did not refuse to produce the phone in my possession. I did not represent to the Court that I possessed the separate serial-number device that EVEN now claims I should have produced.

As it currently stands, the laptop alleged to be EVEN's property has not been in my possession since at least May 8, 2026. The Court has been made aware of this. I do not possess the laptop. I do not possess "another phone" that "should" have been provided. I cannot produce a device that I do not have.

No amount of fines, sanctions, or bizarre threats to my freedom can change those facts. Civil contempt cannot be used to coerce an impossible act. See SEC v. Musella, 818 F. Supp. 600, 602 (S.D.N.Y. 1993); Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc., 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003); Sunlight Fin. LLC v. Hinkle, No. 21-cv-6680, ECF No. 88, at 13–14 (S.D.N.Y. Dec. 7, 2022); Klein v. Aicher, No. 19-cv-9172, ECF No. 104 (S.D.N.Y. 2022).

## VI. EVEN HAS NOT SHOWN PRESERVATION, CHAIN OF CUSTODY, OR LESS INTRUSIVE SOURCES

While I am not attempting to relitigate previous arguments, I respectfully remind the Court of the following:

- EVEN has never made any showing, at any point, on any level, that they acted diligently to preserve their case-critical information or cannot obtain the "data, ESI, documentations, emails" from any other less burdensome and intrusive means.
- EVEN has never owned, possessed, controlled, maintained, inspected, or had any chain of custody as to my personal phone, and cannot tell the Court, for a certainty, any facts about my personal phone.
- EVEN has not produced a modicum of evidence for their claims, which astonishingly seem to be that relevant discovery data is hidden somewhere on the personal phone of a lowly "independent contractor."
- EVEN was offered for the Laptop they insisted was "stolen" to be returned to them and then they balked at that.
- EVEN was offered for the forensic examination to occur in Maryland months ago, as early as January 2026; they scoffed that "all counsel and parties are in New York." The Court granted more relief by moving a SDNY matter to Maryland because it was suddenly convenient for the EVEN defendants due to their collateral litigation against me.

## VII. EVEN'S REQUESTS HAVE BECOME ESCALATING PUNISHMENT, NOT DISCOVERY RELIEF

EVEN repeatedly demanded sanctions and contempt findings. Well, I'm in contempt, and that's STILL not enough. Now EVEN seeks incarceration and fetishizes a Netflix "NARCOS"-themed raid of property by USMS because their months-long campaign of a witch hunt for my personal life was not the outcome they hoped for.

EVEN's ongoing attempts to disguise their true intention of looting my business contacts, private information, work product, privileged communications, and intellectual property as "discovery relief" did not produce what they wanted…and EVEN wants the Court to find that to be my fault.

So now we're here, and at this moment, respectfully, I ask the Court: *when* does it end? How many coins will be inserted into the Courtroom to continue playing EVEN's arcade games of half baked theories?

## VIII. EVEN'S INCONSISTENT CHARACTERIZATION OF MY ROLE AND CREDIBILITY

EVEN has told this Court ad nauseum that I am a liar, I am untrustworthy, I am deceptive, and I am not credible, while also simultaneously admitting that, for some reason, I was entrusted — yes, me of ALL PEOPLE — with ALL of the most confidential information and sensitive documents relevant to this high-stakes federal case, on behalf of their company, for the better part of two and a half years.

Ironically, exactly one year ago, EVEN Counsel told this same Court that it was improper for me to be a party in this matter. (See Dkt 99). Fast forward to February 2026: EVEN hired a Public Relations consultant to not only smear my reputation, but plant their narratives in the media to influence this case, by doing an about-face and now claim that I am "At the dead-center beating heart of this case." Only to turnaround and file case terminating motions where they quote the Plaintiff as saying I was named purely as "leverage against EVEN."

Might I add, this is the very same motion that largely relies upon the **discovery that I produced**, which EVEN, again, talking out of both sides of their face, has told the Court is woefully "incomplete" and required extraordinary relief in the form of inspection of my personal phone.

Nevermind the fact that EVEN's request to terminate this case is mostly hinged upon the discovery of a "liar", who they claim manufactures fake documentation. After taking these overwhelming inconsistencies by EVEN into account, I find it troubling that I am somehow the sole party who has to answer about "contradictions".

But I digress and take a moment to sincerely apologize to The Court for my tone in this filing, as it may come across agitated or sarcastic. Allow me to clarify that while I am not any of those things; I am righteously indignant.

## IX. EVEN HAS NOT PURSUED AVAILABLE SOURCES FOR THE COURT-APPROVED SEARCH SUBJECTS

While EVEN fiercely tries to litigate reality, here on Earth, specifically in this Court, EVEN has been granted leave to subpoena Aaron Scott bka Stove God Cooks since at least March 26, 2026 (Dkt 251). Additionally, on April 24, 2026, after being repeatedly threatened by EVEN Counsel, Plaintiff's counsel produced, in discovery, copies of my communications with Chuck Wilson.

I raise this as it bears heavily on the Court-approved search terms, where the scope was intended to be focused on my communications with aforementioned individuals that are either parties or witnesses to this case. This means that EVEN has had over three months to request copies of my communications with Aaron Scott, Stove God Cooks, directly from Mr. Scott or his counsel, as well as his communications with the Plaintiff related to this case.

EVEN has pursued none of those avenues. Instead, they stick to what they do best: weaponizing The Court and abusing the process to substitute their lack of diligence. The Plaintiff, through email, provided a Dropbox folder that contained alleged screenshots and screen recordings of my conversations with Plaintiff principal Chuck Wilson over two months ago.

When zooming out of this issue and viewing its entirety, this is a massively critical point. Assuming the Court were to accept EVEN's allegation as true, when does the glaring fact that EVEN has numerous options to possibly obtain case-related information that do not involve burdening all parties, delaying the course of the case or further exhaust judicial resources to accommodate EVEN's homegrown insufficiencies?

I respectfully ask The Court to weigh this before making any further determinations regarding contempt and before granting any further relief to EVEN.

## X. EVEN'S SERIAL-NUMBER THEORY DOES NOT PROVE POSSESSION, CUSTODY, CONTROL, DELETION, OR CONTEMPT

EVEN now comes before the Court with their latest red herring theory about a phone that I previously raised disputes about and denied being EVEN's property. I also stated I would preserve and produce responsive evidence. This may come as a shock to the EVEN Defendants, but I'm going to them in on a little secret:

Babygrande is the Plaintiff, and I am a co-defendant in this matter.

I understand it may be hard for EVEN to delineate between the distinctions, as they've acrimoniously spent the better part of a year filing voluminous derogatory comments about me, but the fact remains that I gain no litigation benefit from concealing or withholding relevant Babygrande-related ESI that could assist my own defense.

To the contrary, to the extent responsive materials existed in my possession, custody, or control, my best interest would be to preserve and use them, not destroy or hide them for the benefit of hostile co-defendants.

EVEN cannot now treat the same disputed device issue as new evidence of deception because its own records and vendor report do not match the device I consistently said was not EVEN's phone. A receipt is not a chain of custody. A purchase is not proof of present possession. A serial-number mismatch is not proof of willful contempt.

## XI. EVEN'S EVIDENTIARY DOUBLE STANDARD SHOULD BE REJECTED

As usual, EVEN's evidentiary posture is a bogus double standard and should be rejected.

EVEN Defendants have told the Court my religious beliefs were an "excuse," my medical notes were "phony," my use of the phrase "making a run" was contradictory, my communications with the Plaintiff were "criminal," and "their devices" that were lawfully in my possession were "stolen." Then  asks the Court to accept EVEN's own invoice exhibit as conclusive proof of ownership, custody, control, and alleged substitution.

That is not a fair or reliable evidentiary standard.

I do not ask the Court to find that EVEN's invoice exhibit is false. Instead, I ask the Court to treat it for what it is: an unauthenticated litigation exhibit. Which oddly has no visible Apple branding of any kind, is literally just a "text file" document that anyone can create, is not supported by a custodian declaration, is not tied to a complete chain of custody, or connected to proof that the specific device reflected on the invoice remained in my possession, custody, or control when the later Court orders were entered.

At most, the exhibit suggests that Mag Rodriguez or EVEN purchased an iPhone in November 2023. It does not prove that I possessed that same physical phone at the time of the Courthouse examination, substituted a device, deleted ESI, or violated a clear Court order. Additionally, Rodriguez declared he purchased a phone and presented a receipt with the address as shipped to "212 Plankinton Avenue," while EVEN's corporate address is listed as "313 North Plankinton Avenue" or appears in federal filings as "2027 S 33rd Street" in Milwaukee, Wisconsin.

This demonstrates that this record is not entirely accurate and cannot be relied upon. Nevertheless, Mag Rodriguez also declared that it was only me that allegedly picked up the phone from the Apple store and thus cannot make any factual statements about what phone I possessed then or now.

Before any sanction, adverse inference, expanded access, or contempt consequence is imposed based on the serial-number theory, EVEN should be required to show that specific relevant Babygrande ESI existed on a specific device, that I had a clear obligation and present ability to produce that specific device or ESI, and that any missing ESI resulted from my misconduct as opposed to EVEN's own failure to preserve or manage its devices and systems.

EVEN has not shown that relevant Babygrande ESI was ever stored locally on a phone in my possession, that "ddot@even.biz" was synced or downloaded to a phone, or that any specific relevant ESI was deleted, withheld, or uniquely unavailable from company-controlled or server-side sources. Before any further contempt finding, adverse inference, cost-shifting, or expanded access is considered, EVEN should be required to make that showing.

EVEN's tantrum about the forensic results does not establish deletion, spoliation, bad faith, or contempt. This dispute should remain governed by proportionality, relevance, specificity, and the Court-approved search protocol. A discovery order should not become a moving target.

A party who complies with the order should not be punished because an adversary's assumptions were not validated. And a limited forensic search should not become an open-ended vehicle for character attacks, further personal-device invasion, collateral litigation leverage, or expanded access to private materials.

## XII. EVEN'S POSITION ON COMPANY-CONTROLLED RECORDS HAS BEEN INADEQUATE

My statements in court and activity in my personal life have been intensely scrutinized as "contradictory."

I invite the Court to review EVEN's inconsistent posture on the very discovery issues they have inconsolably campaigned for. On or about February 23, 2026, I requested meet-and-confer request concerning ddot@even.biz account access, recovery settings, audit history, Google Workspace or MDM logs, SSO or admin-console logs, HubSpot access restrictions, recovery phone and recovery email history, and identification of what specific ESI EVEN claimed was missing from the ddot@even.biz account.

EVEN Counsel responded that "the vast majority" of those requests had "no relevance" to the Babygrande litigation. The Court should consider this in its further decisions before granting relief. A copy of that February 23, 2026 correspondence is attached as Exhibit B.

That position cannot be reconciled with EVEN's current sanctions demand. EVEN cannot unilaterally dismiss company-controlled account, audit, access, recovery, and missing-ESI records as "irrelevant" when I requested them, then later ask the Court to sanction me because EVEN did not obtain the forensic outcome it wanted from my personal phone.

If "ddot@even.biz" access, recovery history, audit logs, Google Workspace records, administrative actions, HubSpot restrictions, and identification of allegedly missing ESI were "irrelevant" in February 2026, then EVEN should not be permitted to treat the same subject matter as central in June 2026 when seeking contempt, sanctions, adverse inferences, expanded forensic access, or cost-shifting. Before granting any further relief, the Court should require EVEN to explain why these ordinary company-controlled sources were supposedly "irrelevant" when I requested them, yet important enough now to support sanctions based on alleged missing ESI.

## XIII. EVEN SHOULD ACCOUNT FOR ITS OWN PLATFORM CONTROLS, PRESERVATION CHOICES, AND DEVICE MANAGEMENT

Noticeably, this pattern did not begin with the current device dispute. Babygrande's claims arise from content appearing on a Rodriguez/EVEN-controlled platform and the alleged failure or perhaps deliberate disregard by EVEN and Mag Rodriguez to remove or address that content after takedown demands.

Rather than account for its own platform controls, preservation choices, and removal obligations, EVEN and Mag Rodriguez shifted responsibility to Stove God Cooks and others. The same pattern reoccurs here. EVEN has not shown that it made timely formal demands for the laptop or phone before turning the issue into a discovery dispute; has not shown robust steps to preserve, track or recover its own devices and company-controlled ESI; and now asks the Court to remedy those self-inflicted mishaps through sanctions against me.

## XIV. EVEN'S EXTRA-PROTOCOL SERIAL-NUMBER SEARCH SHOULD BE ADDRESSED BEFORE FURTHER SANCTIONS

EVEN demands that the Court continue to hold me in contempt based on unfounded allegations that I "violated a Court order." While we're on the subject of violating Court orders, it's hard to ignore that the Court only approved specific search terms and a clearly defined scope.

EVEN's Consilio hired examiner confirms in their declaration that, at the direction of EVEN counsel, they deliberately went beyond that scope, invading another area of my phone unrelated to the Court-approved search to retrieve the serial number, which EVEN is now trying to convert into a new issue.

Nowhere does Consilio's declaration state for a certainty or fact that it determined I deleted any data from my phone. Instead they only offer EVEN sponsored ideas about what may or might be. One of which is a theory that my phone had no number, yet EVEN told The Court I have more than one phone number and that any discovery I produced could have only come from my phone. The more speculation made the less proof is provided.

Well here's the kicker: The absence of an active phone number also does not establish misconduct. I suspended wireless service because the phone was being turned over to USMS and handled by a vendor retained by hostile co-defendants. That was a privacy and privilege precaution, not obstruction.

The Court approved specific search terms and a defined protocol. EVEN's own forensic examiner confirms that, at the direction of EVEN's counsel, Consilio checked the phone's serial number to determine whether it matched the iPhone EVEN claims it purchased for me. Dkt. 307 ¶ 24.

That was not part of the Court-approved search terms. The approved search terms concerned Babygrande, Stove God Cooks, Aaron Scott, Chuck Wilson, Jeremy Gerson, Hillel Parness, related communications, and related keywords. They did not authorize EVEN's counsel to direct the vendor to conduct a separate device-ownership investigation or to expand the search into serial-number verification for use in a sanctions narrative.

I do not dispute that a forensic report may identify basic device information. The problem that the Court needs to rectify is that EVEN's counsel affirmatively directed the vendor to perform a beyond-protocol comparison against EVEN's preferred serial-number theory, and EVEN used that comparison to accuse me of deception and contempt.

I ask that the Court firstly address that before piling further unjustifiable fines or sanctions on me.

Again, to my knowledge, this is a civil court case related to a copyright/trademark matter, where EVEN is the primary defendant for actions allegedly committed by EVEN and Mag Rodriguez against Babygrande.

Pointing the finger at me to create diversions will not change those facts or the inevitability that EVEN will have to face the music they've infringed upon.

**XIII. REQUESTED RELIEF**

For the reasons set forth above, I respectfully request that the Court:

1. find that EVEN has not carried its burden to establish, by clear and convincing evidence, that I violated a clear and unambiguous Court order, deleted or wiped responsive Babygrande-related ESI, or presently have the ability to produce a device or ESI I do not possess;

2. deny EVEN's request for additional sanctions, adverse inferences, expanded forensic access, personal-account access, application access, cloud-account access, physical-address disclosure, U.S. Marshals searches, detention, accelerated fines, cost-shifting, or other coercive relief;

3. vacate or suspend phone-related contempt consequences and stop further accrual of coercive fines because I produced the phone in my possession and provided unlock information;

4. find that the Court-approved search returned no substantive Babygrande-related ESI because the only search hits identified by Consilio were contacts;

5. find that any temporary application-level access issue does not establish contempt or noncompliance absent proof that a clear and unambiguous order required the specific application credential at issue, that I knowingly withheld a correct code, and that the issue prevented recovery of specific Babygrande-related ESI;

6. disregard or strike non-responsive portions of the Lafko Declaration and exhibits to the extent EVEN relies on them to seek sanctions, adverse inferences, expanded access, or credibility findings;

7. prohibit EVEN from relying on non-responsive personal-device observations or the counsel-directed serial-number comparison as proof of contempt, deletion, spoliation, bad faith, or deception;

8. decline to treat the serial-number discrepancy as proof of contempt, deletion, spoliation, bad faith, or deception absent competent evidence of chain of custody, continuous possession, present control, a written return obligation, and specific missing Babygrande-related ESI;

9. require EVEN and Consilio to sequester, return, destroy, or certify non-use of non-responsive personal information obtained from the phone image outside the approved search terms;

10. deny EVEN's request that I pay Consilio's or EVEN's counsel fees and costs for the forensic process, missed appearances, or any alleged "fruitless exercise" concerning the phone;

11. require EVEN to provide a sworn record of its own preservation, device-management, custody, tracking, recovery, and company-controlled source searches before any further sanctions are considered, including when the laptop was acquired, who possessed or controlled it before it was issued to me, whether it was reset before issuance, what data existed on it before issuance, whether any potentially relevant ESI was preserved, imaged, retained, backed up, or recovered before it was issued to me, whether it was enrolled in any MDM, endpoint, backup, tracking, or inventory system, whether EVEN contacted Apple, law enforcement, insurers, airports, airlines, TSA, Uber, or other potential recovery sources, and whether the same ESI exists in EVEN-controlled systems; and

12. preserve my rights to seek reconsideration, a stay, severance, exclusion of tainted material, appellate review, or any other appropriate relief if further punishment is imposed without first addressing the protocol breach, lack of safeguards, lack of chain of custody, lack of present control, and use of non-responsive material.

Respectfully submitted,

**\s/ Damien "DDOT" Washington**
Defendant, Pro Se
The United States of America

# EXHIBIT A

  Ride     Rental Cars     Courier     Eat

← Back to trips

## Your Trip

1:27 PM, Friday May 8 2026 with Stanislus          `Cancelled`



6001

 Get Help                                                    ›

# EXHIBIT B

 

# Meet-and-Confer / Deficient Discovery Production – ddot@even.biz Account Access, Recovery, and Audit Records (24-hour request)

2 messages

**Damien DDot Omen** <span style="color:gray">[redacted]</span>                                    Mon, Feb 23, 2026 at 9:16 AM
To: Hillel Parness <hip@hlh.com>, David Leichtman [redacted] [redacted]
Emma Hoffmann <EHoffm...group.com>

David and Sherli,

This email is to meet and confer and to place EVEN Defendants on notice that their discovery production to date has been **insufficient and inadequate**, and that they are delinquent and deficient in producing discovery relating to control, recovery, access restrictions, and audit history for the account **ddot@even.biz** and related systems.

Given the imminent and ongoing prejudice, Mr. Washington requests that EVEN Defendants **produce the following within 24 hours** of this email. If EVEN Defendants contend any requested item does not exist, has been deleted, or is otherwise unavailable, please state that expressly and identify (i) who conducted the search, (ii) what repositories were searched, (iii) the search terms/date ranges used, and (iv) the reason the item is unavailable (including any retention/deletion policies).

## A. Requests for Production (RFPs) – Produce within 24 hours

1. **Account recovery communications** (texts, emails, messages) referencing or relating to recovery/verification/security settings for **ddot@even.biz** or any access recovery for Mr. Washington's EVEN accounts (including communications involving Enrique "Mag" Rodriguez and any EVEN personnel or vendors).

2. **Communications with IT/admins/vendors** regarding restricting, disabling, suspending, limiting, or otherwise interfering with Mr. Washington's access to **ddot@even.biz** and any connected systems (including any instructions to IT, contractors, or platform support teams).

3. **Records showing the recovery phone number and recovery email** associated with **ddot@even.biz** (current and historical), including change history and who made each change.

4. **MDM / Google Workspace / Microsoft 365 audit logs** (as applicable) reflecting administrative actions, access changes, login events, and security/recovery changes for **ddot@even.biz** for the period **March 2024 through September 2025**, including any admin console logs and security logs.

5. **Helpdesk tickets and access-control logs** relating to Mr. Washington's access or offboarding, including any tickets with Google, Microsoft, Okta/SSO vendors, HubSpot, or internal helpdesk systems (Jira/ServiceNow/Zendesk/etc.), for **March 2024 through September 2025**.

6. **Okta/SSO logs and admin console logs** (as applicable) reflecting account provisioning/deprovisioning, group membership changes, MFA/recovery changes, and access blocks relating to **ddot@even.biz** and Mr. Washington, for **August 2024 through September 2025**.

7. **All email communications** from any EVEN Defendant(s) and/or EVEN personnel **between March 2024 and September 2025** that reference Mr. Washington, ddot@even.biz, account access, recovery, "offboarding," "Stove God Cooks "Babygrande" "Chuck Wilson" "security," "MFA," "DDot" "D-Dot" "D Dot" "Damien" "deleted" "deleted emails" "render" "password reset," "Business Development", "Artist Relations","Discord", "unauthorized" "disable," "suspend," "HubSpot," "Google Workspace," "Okta," "DMCA", "SSO," "admin," "backend" backend.onrender.com" "onrender.com" "Slack" or similar terms.

8. **AI note-taking / meeting capture systems:** Produce copies of any data, recordings (audio/video), transcripts, summaries, and associated metadata generated by any AI note-taking mechanism(s) or integrated meeting/communications technology utilized by EVEN employees (including in connection with EVEN.biz meetings, calendars, or email/communications platforms), for the period **March 2024 through September 2025**, to the

extent such materials reference Mr. Washington, ddot@even.biz, account access/recovery, offboarding, Google Workspace, Gmail, Google Docs, security/MFA, DDot, unauthorized, hubspot, slack, Discord Business Development, Damien, D-Dot, D Dot, Stove God Cooks, "deleted emails", Babygrande, Chuck Wilson, DMCA, takedown,or any subjects relevant to the claims/defenses in this action.

9.  **Workplace and messaging platforms (including Slack/Discord and mobile/social messaging):** Produce copies of all communications (including direct messages, group messages, channel messages, threads, attachments, exports, and associated metadata) for the period **March 2024 through September 2025** from/ within any of the following systems to the extent they reference Mr. Washington, ddot@even.biz, account access/recovery, offboarding, security/MFA, DDot, unauthorized, hubspot, slack, Discord Business Development, Damien, D-Dot, D Dot, Stove God Cooks, "deleted emails", Google Workspace, Babygrande, Chuck Wilson, DMCA, takedown, or any subjects relevant to the claims/defenses in this action: **Slack (including Slack group messages), Discord, iMessage, iCloud Messages, iPhone individualized text-message threads, iPhone or Android group messages/SMS/MMS, Instagram Direct Messages and Instagram group messages, WhatsApp messages and WhatsApp group messages.**

## B. Interrogatories – Answer within 24 hours

1. **What recovery phone number and what recovery email** (current and historical) were associated with **ddot@even.biz** during **March 2024 through September 2025**?

2. **Who set or changed** the recovery phone number and/or recovery email for **ddot@even.biz**, and **when**? Identify each person, date, and method (admin console action, support request, device action, etc.).

3. **Who blocked** Mr. Washington's access to **HubSpot** associated with **ddot@even.biz**, and **when**? Identify the actor(s), date/time, and mechanism (HubSpot admin action, SSO action, password reset, deprovisioning, etc.).

4. Identify **each system involved** in controlling or restricting Mr. Washington's access (including but not limited to Google Workspace, OnRender.com even-backend.onrender.com, Microsoft 365, Okta/SSO, HubSpot, device management/MDM, and any internal admin console tools), and describe the specific action(s) taken in each system and when.

5. Identify what **specific ESI is missing** from the **ddot@even.biz** account and related systems that is relevant to the Babygrande matter, including any gaps in retention, deletions, or inaccessible data, and the reason(s) for any missing ESI. Provide authentic screenshot captures.

6. Produce/identify the **Google audit/activity logs** for **ddot@even.biz** reflecting relevant administrative actions and activity for the period **March 2024 through September 2025**, and confirm the repositories searched to locate those logs. Provide authentic screenshot captures.

If EVEN Defendants do not produce the above **within 24 hours**, Mr. Washington will seek appropriate relief, including a discovery conference and/or an order compelling production, as well as any other remedies warranted by the record.

Please confirm by return email when production will be made, and in what format (native logs, CSV exports, PDF, etc.), and identify the custodian(s) and repositories searched.

Damien "DDOT" Washington (pro se)

ابن العليّ

--
-
Damien "DDot" W.
ConnecteDDots Music | ConnecteDDots Management
si monumentum requiris, circumspice....

---

**Emma Hoffmann** <EHoffmann@egsllp.com>                    Mon, Feb 23, 2026 at 9:57 AM

To: Damien DDot Omen <~~~~~~~~~~@gmail.com~~~>
Cc: Hillel Parness <~~~~~~~~~~~~~~>, David Leichtman <~~~~~~~~~~~~~~~~~~, Sherli Furst <~~~~~~~~~~~~~~~~

Mr. Washington:

You have not served any discovery requests on the EVEN Defendants.  Therefore, you cannot demand documents "within 24 hours."   In any event, the vast majority of what you are asking for below has no relevance to the Babygrande litigation, and to the extent it does, the documents have already been produced.  In addition, under the Court's rules, you cannot unilaterally send the Court a discovery dispute letter without providing us a draft of a joint letter, with 72-hours to respond.  We know you are aware of the Judge's rules, but please be aware that your demand, in which you suggest that you will violate the Court's rules by filing something frivolous in the next 24-hours, violates the Court's rules.



**Emma Hoffmann**
**Associate**
1345 Avenue of the Americas, 11th Fl., New York, NY 10105
Telephone: (212) 370-1300 Fax: (212) 370-7889
EHoffmann@~~~~~~~~~~~~~~egllp.com

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** Damien DDot Omen <~~~~~~~~~~~~~~~~~~~~~~~~~~>
**Date:** Monday, February 23, 2026 at 09:18
**To:** Hillel Parness <hip@~~~~~~~~~~>, David Leichtman <~~~~~~~~~@~~~~~~.com>, Sherli Furst <~~~~~~~@~~~~~~>, Emma Hoffmann <~~~~~~~~~~~~~~~~>
**Subject:** Meet-and-Confer / Deficient Discovery Production – ddot@even.biz Account Access, Recovery, and Audit Records (24-hour request)

 **Caution: External Sender**

[Quoted text hidden]