**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

September 16, 2026
Honorable Jessica G. L. Clarke
300 Quarropas Street
White Plains, NY 10601

RE: **Babygrande Global, Inc. v. Rodriguez, et al., No. 1:24-cv-06785-JGLC** DEFENDANT DAMIEN "DDOT" WASHINGTON'S MOTION FOR RECUSAL UNDER 28 U.S.C. § 455(a), REASSIGNMENT, OR INDEPENDENT REVIEW OF WASHINGTON RELATED ITEMS AS TO CONTEMPT, DEVICE, SANCTIONS, FORENSIC, DISCOVERY, EVIDENTIARY, AND ENFORCEMENT PROCEEDINGS

Dear Judge Clarke:

I, Damien "DDOT" Washington, respectfully move pursuant to 28 U.S.C. § 455(a) for recusal, reassignment, or independent review of the Washington-specific contempt, device, sanctions, forensic, discovery, evidentiary, and enforcement proceedings in this action.

This is not an adverse-rulings motion. I recognize that adverse rulings standing alone ordinarily do not establish judicial bias or require reassignment, and I do not ask the Court to find subjective bad faith. The question is whether the cumulative Washington-specific record has reached the point where an objective and fully informed observer could reasonably question whether these proceedings continue to bear the appearance of impartiality required by § 455(a).

The problem is no longer any single ruling. It is the recurring asymmetry by which disputed allegations concerning me have repeatedly become predicates for increasingly coercive relief, while my evidence concerning present ability, financial limitations, medical limitations, religious observance, access to counsel, alternative sources of ESI, employment-related retaliation, and actual compliance has repeatedly received materially different treatment.

Throughout this case Plaintiff and EVEN Defendants have had counsel able to litigate on their behalf while they continue their professional and personal obligations. I, by contrast, have been required personally to navigate forensic inspection, repeated interstate travel demands, contempt proceedings, coercive fines, disputed device allegations, extensive sworn submissions, impaired docket access, periods without counsel, an evidentiary proceeding, and now liberty-threatening enforcement.

That disparity is particularly significant because I am not the operator or owner of EVEN, the core infringement allegations concern EVEN's platform and Plaintiff's rights dispute concerning Aaron Scott p/k/a Stove God Cooks, and discovery has produced evidence that supports that I was considered "leverage" against EVEN.

The Court's dissatisfaction with my compliance history does not eliminate the obligation to distinguish unwillingness from inability, disputed allegations from proven facts, and actual compliance from defiance. I have participated in virtual proceedings, complied with the Court-directed Maryland process, physically appeared at the Maryland federal courthouse, produced the phone in my possession, provided unlock information, filed sworn declarations, produced a police report concerning the lost laptop, and continued participating in this litigation despite substantial financial and representational limitations.

Yet those acts of compliance have not displaced the increasingly fixed characterization of me as a noncompliant litigant. Instead, compliance has repeatedly generated a new allegation, a new factual predicate, or another basis for escalation. The cumulative result now warrants independent judicial review.

**I. SECTION 455(a) PROTECTS THE APPEARANCE OF IMPARTIALITY, NOT MERELY THE ABSENCE OF PROVABLE SUBJECTIVE BIAS.**

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The statute protects public confidence in the appearance of justice as well as actual impartiality. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988).

The Second Circuit applies an objective standard: whether a reasonable person, knowing and understanding all relevant facts, would conclude that the judge's impartiality might reasonably be questioned. United States v. Amico, 486 F.3d 764 (2d Cir. 2007); United States v. Lovaglia, 954 F.2d 811 (2d Cir. 1992); In re International Business Machines Corp., 45 F.3d 641 (2d Cir. 1995).

Liteky v. United States, 510 U.S. 540 (1994), recognizes that judicial rulings ordinarily do not establish bias. This motion does not rely merely on rulings. It concerns the cumulative manner in which disputed facts have been characterized and resolved, the unequal scrutiny placed on competing parties, the treatment of accommodation and present-ability issues, and the escalation from civil discovery disputes into fines and potential loss of liberty.

Reassignment is likewise appropriate where necessary to preserve the appearance of justice. United States v. Robin, 553 F.2d 8 (2d Cir. 1977).

**II. THE ASYMMETRY APPEARED EARLY AND PRECEDED THE CONTEMPT PROCEEDINGS.**

The present problem did not begin with the recent hearing dispute. When I first appeared pro se in May 2025 and filed my motion to dismiss and supporting materials, EVEN Defendants requested that my filing be sealed, and the Court granted temporary sealing.

Months later, after EVEN Defendants filed accusations portraying me as a conspirator, thief, and participant in alleged criminal or extortionate conduct, I sought sealing and protection concerning those materials. My request was denied, including on the basis that embarrassment or disagreement with the accuracy of opposing counsel's allegations was not a basis for sealing.

I respectfully submit that the contrast contributes to the cumulative appearance problem. EVEN obtained protection from a filing it disputed; when I sought comparable protection from highly prejudicial accusations concerning alleged criminal conduct, I was denied substantially similar relief.

The same disparity appeared in case-management procedure. My February 2026 request for a discovery conference was denied because I had not submitted a joint letter with opposing counsel. Yet EVEN Defendants repeatedly filed unilateral letters accusing me of noncompliance without comparable consequences or enforcement of the joint-submission requirement.

When I sought Court protection in June 2025 after reporting intimidation, harassment, and employment pressure by my then-employer and co-defendant Enrique "Mag" Rodriguez, my request was denied as moot when Rodriguez stated that he would cease discussing the litigation with me.

That disposition did not resolve my expressed concern that litigation-related pressure could result in employment retaliation. I was later terminated by EVEN and thereafter faced a substantial escalation in accusations and device-related litigation brought by the same represented co-defendants. These individual rulings do not need to independently establish partiality. Their cumulative treatment, however, forms the background in which later findings of “noncompliance” must be evaluated.

**III. THRESHOLD DEFENSES WERE SUBORDINATED WHILE EXTRAORDINARY FORENSIC RELIEF AGAINST ME EXPANDED.**

I also attempted to resolve threshold questions concerning my status in this action.

After prior counsel sought leave to assert a crossclaim against EVEN, the Court conditioned that process on withdrawal of my still-pending motion to dismiss. The motion was withdrawn, the crossclaim ultimately was not filed, counsel withdrew, and I resumed appearing pro se.

My request to restore the motion to dismiss was later denied, and I was required to answer the amended complaint while issues concerning service, joinder, and my proper role in the action remained disputed. At the same time, EVEN successfully transformed a previously denied device-turnover dispute into a discovery and forensic-search issue.

The Court authorized forensic examination of my personal phone and an EVEN-issued laptop even though EVEN had not established through competent evidence that relevant ESI was actually missing, that I had deleted it, that the same information was unavailable from company-controlled repositories, or that inspection of my personal phone was the least intrusive means of obtaining the information.

This was particularly significant because EVEN controlled its own email systems, employee accounts, platform records, administrative systems, server-side data, backups, customer information, and other repositories.

I also repeatedly raised that EVEN had disabled or restricted my backend and company-system access before my termination. That fact provided an obvious alternative explanation for why I would not possess particular company information, but it did not receive comparable scrutiny before extraordinary forensic relief was imposed.

EVEN was thus able to convert a contested employment/property dispute into forensic discovery without first making the same kind of detailed evidentiary showing that I have repeatedly been required to make concerning my own conduct.

**IV. THE TRAVEL, MEDICAL, RELIGIOUS, AND FORENSIC PROCESS REFLECTED A PARTICULARLY STARK ASYMMETRY.**

The forensic process most clearly illustrates the imbalance. The Court initially ordered EVEN Defendants to bear my reasonable travel costs for the White Plains forensic examination.

I am unemployed, had documented medical travel restrictions, was observing Ramadan, and repeatedly attempted to address travel logistics and obtain a workable compliance path.

I also sought Court intervention concerning those logistics. My request for a discovery conference was denied because the submission was not joint, even while EVEN continued filing unilateral letters characterizing my conduct as noncompliance.

The Court later shifted the requirement so that I would have to advance my own travel costs and obtain reimbursement afterward. That change occurred shortly before a scheduled appearance and despite my repeated explanation that I lacked the money to prepay interstate transportation.

My inability to advance the travel expense then became part of the noncompliance record.

The April 14 record further illustrates the concern. In summarizing the dispute, the Court characterized my travel position primarily as demands for a "private jet" and "luxury chauffeur service."

That characterization omitted material context I had already placed before the Court: I had proposed other transportation options, including funds for a rental vehicle or commercial air travel, and the more expensive transportation options were raised in part because of medical and logistical concerns regarding unreliable rideshare transportation and extended train travel.

Whatever the Court ultimately thought of those alternatives, reducing the record to a supposed demand for a private jet and luxury transportation materially altered the appearance of my actual position and reinforced a narrative that my accommodation requests were frivolous or obstructive.

The Court likewise stated during the April 14 hearing that it appeared "as it has appeared to me all along" that I was attempting to thwart EVEN's efforts to search the devices.

That statement preceded later evidentiary disputes and is significant because it reflects that my credibility and intent had already been substantially assessed before subsequent device and contempt issues developed.

My medical submissions and religious-observance requests were also repeatedly discussed through the lens of noncompliance. The Court characterized certain medical materials as insufficient or conflicting and stated that, at most, I appeared to be experiencing back pain, while repeatedly warning that detention could follow.

The issue is not that the Court was required to accept every medical or religious request. It is that my efforts to obtain workable accommodations repeatedly became evidence supporting a broader conclusion that I was attempting to thwart the process.

**V. MARYLAND DEMONSTRATES HOW AN ACCOMMODATION WAS UNAVAILABLE WHEN I REQUESTED IT BUT BECAME ACCEPTABLE WHEN EVEN PROPOSED IT.**

The later Maryland process makes that asymmetry especially apparent.

Before April 14, I had sought alternatives to repeated travel to White Plains, including having the forensic process occur closer to me in Maryland. That accommodation was not granted.

I had also proposed returning or delivering the EVEN-issued laptop while maintaining my objection to forensic examination of my personal phone.

Those alternatives did not resolve the dispute.

At the April 14 conference, however, EVEN's counsel proposed that the forensic process occur in Maryland because EVEN had separately filed a defamation action against me there and had Maryland counsel who could participate.

The Court immediately responded that the proposal was "helpful." The process was thereafter ultimately conducted through the federal courthouse in Greenbelt, Maryland.

The same geographic accommodation that had not been available when I raised Maryland as a practical solution became workable once EVEN proposed it in connection with its separate Maryland litigation.

I nevertheless complied with the Maryland procedure. I appeared at the federal courthouse. I produced the phone in my possession. I provided unlock information. The phone was forensically imaged.

That should have been meaningful evidence of compliance. Instead, the process generated a new theory: EVEN asserted that the phone I produced did not match a serial number associated with a phone Rodriguez had purchased years earlier and that the device contained little data.

The focus therefore shifted from whether I would produce the phone in my possession to whether I had produced a different physical device identified after the fact through serial-number information.

My compliance did not purge contempt. It became the basis for further contempt.

**VI. THE PHONE CONTEMPT NOW RESTS ON UNRESOLVED PREDICATE FACTS AND AN UNCLEAR PURGE CONDITION.**

I have consistently disputed EVEN's characterization of the phone as an EVEN-owned corporate device remaining in my possession and control.

Months before the serial-number issue arose, I had already advised the Court that the particular phone EVEN referenced was no longer active or available in the manner EVEN described, disputed corporate ownership, and represented that I would preserve responsive ESI.

After I complied with the Maryland process and produced the phone in my possession, EVEN advanced the theory that I had produced the "wrong" phone.

But evidence that Rodriguez purchased a phone does not by itself establish continuous ownership, chain of custody, or my continuous possession of that specific serial-number device through subsequent Court orders.

EVEN has not shown a signed device acknowledgment, device-return agreement, corporate inventory record demonstrating continuous custody, MDM records establishing continued control, tracking records, prior forensic images, or comparable evidence proving that I presently possess or control that particular physical device.

Nor has EVEN established that specific Babygrande-related ESI existed on that particular device, was deleted by me, or is unavailable from EVEN-controlled systems or other sources. There was an additional example of the same problem during the April 14 conference when EVEN's counsel stated that, based on an "investigation" and my purported social-media activity, EVEN believed I had another phone number.

No underlying evidence was presented on the record at that point. I dispute that I made social-media postings demonstrating possession of another phone or phone number. Nevertheless, the Court responded that EVEN's representation was "helpful."

This illustrates the concern: speculative or unsupported EVEN allegations have repeatedly been allowed to influence the factual narrative before their evidentiary foundation is tested. The resulting contempt problem is substantial. If the purge condition is production of the phone in my possession for forensic imaging, I complied. If the purge condition has become production of another physical serial-number device, there must be a factual determination that I presently possess or control that device and have the present ability to produce it.

Civil contempt cannot operate as a punishment for inability. United States v. Rylander, 460 U.S. 752 (1983). A coercive sanction must retain a genuine opportunity for compliance; otherwise its character becomes punitive. United Mine Workers v. Bagwell, 512 U.S. 821 (1994).

Continuing a substantial financial sanction without resolving those predicate facts materially contributes to the appearance that the conclusion of noncompliance has preceded the evidentiary inquiry.

**VII. THE LAPTOP ISSUE REFLECTS THE SAME ONE-SIDED SCRUTINY.**

The laptop presents the same pattern. The Court has already stated that it “remains skeptical” of my explanation concerning the lost or stolen laptop before the evidentiary hearing at which my credibility is to be tested.

I submitted a police report concerning the laptop. Yet EVEN, which claims that the laptop belongs to it and potentially contains critical case-related information, has not represented that it undertook comparable steps to locate its own property.

There has been no meaningful showing that EVEN contacted the investigating police department, supplied serial-number or identifying information, used device-tracking or MDM systems, reviewed endpoint-management records, pursued insurance or inventory procedures, contacted prior custodians, or exhausted company-controlled backups and repositories.

The burden has instead remained principally on me to explain the loss while EVEN seeks credibility findings, sanctions, adverse inferences, or contempt concerning its own alleged device. That is precisely the type of dispute that warrants an independent factual review rather than further escalation based primarily on assumptions about my credibility.

**VIII. THE COURT’S TREATMENT OF FINANCIAL LIMITATIONS, ACCESS TO COUNSEL, AND BASIC LITIGATION ACCESS HAS CREATED AN IMPOSSIBLE ASYMMETRY.**

My financial circumstances have repeatedly been both recognized and used against me. I was unemployed or underemployed for substantial periods and could not maintain continuous counsel. I have litigated personally against represented corporate and commercial parties while confronting transportation expenses, discovery burdens, ordinary living costs, and the cost of basic access to federal litigation.

My financial circumstances deteriorated to the point that my PACER search privileges were disabled for nonpayment. At the same time, the Court imposed coercive fines reaching $15,000, expressly structuring the amount around my financial circumstances.

There is a fundamental inconsistency in recognizing that I lack substantial financial resources while simultaneously treating the practical consequences of that same financial hardship, inability to maintain counsel, inability to maintain full PACER search access, inability to prepay travel, and difficulty satisfying accelerated procedural demands, as further evidence of defiance.

The representation disparity is equally concerning. When I sought pro bono counsel, my application was denied at a hearing based in part on the understanding that the application was incomplete. My position is that I had submitted the complete materials and that the issue resulted from Pro Se Intake processing.

More recently, I sought approximately two additional weeks so counsel considering representation could appear and adequately prepare for proceedings carrying possible contempt and liberty consequences.

That accommodation was not granted. The practical result is that a litigant who cannot consistently afford counsel is repeatedly required to defend himself against represented adversaries while facing increasingly severe sanctions for procedural and discovery disputes that counsel ordinarily would manage.

**IX. THE COURT'S FILING AND CASE-MANAGEMENT REQUIREMENTS HAVE ALSO OPERATED UNEVENLY.**

The same concern appears in basic filing procedure. I have been denied relief for failure to proceed through joint-submission procedures and later subjected to filing restrictions requiring leave before making additional motions.

Meanwhile, EVEN Defendants repeatedly filed unilateral letters accusing me of misconduct and noncompliance without comparable enforcement of the joint-submission requirement. The Court also characterized some of my pro se requests as "frivolous" and stated that the Court "should not have to chaperone Mr. Washington in order for him to comply."

Viewed in isolation, those comments might be ordinary expressions of judicial frustration.

Viewed together with the repeated treatment of medical restrictions, religious observance, financial inability, transportation limitations, lack of counsel, disputed device ownership, and disputed present ability as manifestations of noncompliance, they reinforce the appearance that subsequent Washington-specific disputes have been filtered through an established expectation that I am acting in bad faith.

That is the core § 455(a) concern.

**X. THE RECENT SEPTEMBER PROCEEDINGS ARE A CAPSTONE TO THE EXISTING PATTERN, NOT THE BASIS OF THIS MOTION.**

I have separately sought emergency relief concerning the September 18, 2026 evidentiary hearing, including a stay or adjournment and related enforcement relief. I incorporate that application by reference solely for purposes of identifying the pending requests and do not duplicate them here. This motion independently seeks recusal and reassignment under 28 U.S.C. § 455(a).

The recent events matter only because they demonstrate that the preexisting pattern has now reached potential liberty consequences.

I am currently outside the United States, thousands of miles from White Plains; have experienced unreliable or compromised email access amid documented cybersecurity incidents; have lacked reliable PACER search access because of financial limitations; recently obtained professional employment after an extended period of financial instability; and remain without formally appeared counsel in this action.

Yet my request for a brief accommodation to permit counsel to appear and prepare was denied while the prospect of an order to show cause concerning arrest remained. At the same time, represented counsel in this case have received scheduling adjustments for legitimate professional and religious reasons.

I do not object to accommodations being provided to opposing counsel. They should be. The appearance problem arises because ordinary scheduling concerns of represented counsel have been accommodated while my requests involving thousands of miles of international travel, financial inability, impaired electronic access, lack of counsel, work obligations, medical limitations, and religious observance have repeatedly been treated as another instance of "noncompliance."

The issue is not whether every request I made had to be granted. The issue is whether a reasonable observer reviewing the cumulative record could now conclude that my circumstances are no longer being evaluated independently of the Court's previously expressed belief that I am attempting to thwart its orders.

**XI. THE WASHINGTON-SPECIFIC COLLATERAL PROCEEDINGS HAVE OVERTAKEN MY ACTUAL ROLE IN THE UNDERLYING CASE.**

The severity of these collateral proceedings should also be measured against my actual role in the litigation.

I did not operate or control the EVEN platform. I was not the principal party responsible for the platform conduct alleged by Plaintiff. The underlying copyright and contractual dispute principally concerns Babygrande, EVEN, Rodriguez, and Aaron Scott p/k/a Stove God Cooks.

Discovery has also produced evidence that Plaintiff viewed me as "leverage" against EVEN and identified EVEN as the party with the significant financial resources.

Nevertheless, the Washington-specific collateral track now encompasses disputed phones, a laptop, forensic inspection, contempt, coercive fines, personal travel, financial scrutiny, sworn declarations, credibility proceedings, filing restrictions, sanctions requests, and possible arrest-related enforcement.

Meanwhile, on August 28, 2026, Aaron Scott publicly announced that he had reconciled with Babygrande and renegotiated his recording agreement with Plaintiff. That development may bear directly on ownership, control, licensing, damages, injunctive relief, witness interest, settlement posture, and whether the claims against me remain materially live.

Before the collateral proceedings against me continue to expand, the Court should require disclosure sufficient to determine whether the underlying controversy against me remains what it was when those coercive procedures began.

**XII. THE CUMULATIVE RECORD WARRANTS REASSIGNMENT OR INDEPENDENT REVIEW.**

No individual incident described above independently controls this motion. The cumulative record does.

My first substantive filing was sealed at EVEN's request, while my later request to protect myself from highly prejudicial accusations was denied. My request for a discovery conference was rejected for lack of a joint letter while EVEN repeatedly proceeded through unilateral submissions. Employment-pressure concerns were deemed moot before the retaliation I feared occurred. Threshold defenses remained unresolved while extraordinary forensic discovery expanded. EVEN-controlled data sources were not subjected to scrutiny comparable to my personal devices. Travel costs were first placed on EVEN and then shifted to me despite known financial hardship. Medical and religious accommodations were repeatedly interpreted through a noncompliance lens. My travel position was reduced to references to a private jet and luxury transportation while other options I proposed were omitted from the Court's characterization. A Maryland accommodation became viable after EVEN proposed it even though I had previously sought a Maryland solution.

My actual compliance in Maryland produced a new serial-number theory and continuing contempt rather than closure. Unsupported or undeveloped EVEN assertions were credited as useful before their evidentiary foundation was tested. The laptop credibility issue has been prejudged through expressed skepticism while EVEN's own recovery efforts remain largely unexamined. My inability to afford PACER and continuous counsel exists alongside a $15,000 coercive fine. And these accumulated disputes have now progressed to possible arrest-related consequences.

Taken together, these circumstances create more than dissatisfaction with rulings. They create an objective appearance that the Washington-specific proceedings have become anchored to an established view of me as a litigant who is intentionally refusing to comply, such that new disputes and new evidence are repeatedly interpreted through that premise.

A new judicial officer would not be asked to erase the docket or automatically reverse prior rulings.

The purpose of reassignment would be to permit independent review of the unresolved factual predicates, present-ability questions, contempt purge conditions, device issues, credibility disputes, proportionality questions, and future enforcement measures without the accumulated assumptions that now dominate the Washington-specific track.

That is precisely the type of relief necessary to preserve confidence in the appearance of justice.

**XIII. REQUESTED RELIEF**

For the foregoing reasons, I respectfully request that the Court:

1. Recuse pursuant to 28 U.S.C. § 455(a) from the Washington-specific contempt, device, forensic, sanctions, discovery, evidentiary, and enforcement proceedings and cause those matters to be reassigned to another District Judge;
2. Alternatively, refer the Washington-specific proceedings through the appropriate SDNY administrative process to the Chief Judge, Assignment Committee, or another neutral judicial officer for independent review or reassignment;
3. Stay further Washington-specific contempt escalation, additional coercive fines, adverse inferences, sanctions, warrant or arrest-related process, and other liberty-restricting enforcement while reassignment or independent review is considered;
4. Permit the reassigned or reviewing judicial officer to independently examine the factual predicates underlying the phone contempt, including ownership, chain of custody, continuous possession, present possession or control, present ability to produce the specific device, whether Babygrande-related ESI is actually missing, and whether a clear and presently achievable purge condition exists;
5. Permit independent review of the laptop issue, including EVEN's own efforts to locate, track, recover, preserve, or reconstruct the contents of the alleged company device and whether relevant information exists in company-controlled repositories;
6. Permit independent review of whether financial inability, lack of PACER search access, inability to maintain continuous counsel, medical limitations, religious observance, travel limitations, unreliable or compromised electronic communications, and other present-ability issues were improperly treated as willful noncompliance;
7. Require EVEN, before obtaining further Washington-specific sanctions based on allegedly missing ESI or devices, to provide competent evidence concerning its own alternative repositories, preservation efforts, device-management records, recovery efforts, chain of custody, and the specific ESI it contends remains missing;
8. Require Plaintiff to disclose whether the August 28, 2026 reconciliation and renegotiated recording agreement with Aaron Scott p/k/a Stove God Cooks affects ownership, licensing, damages, injunctive relief, witness interest, settlement posture, or whether claims remain materially live against me; and
9. Grant such other and further relief as the Court deems just and proper.

I do not seek preferential treatment or relief from lawful obligations. I seek an independent judicial review of a Washington-specific record that has progressed from discovery disputes into substantial monetary sanctions and threatened loss of liberty while fundamental predicate facts remain disputed.

The cumulative record has reached the point where reassignment is necessary to ensure not merely my confidence in the process, but the objective appearance that future decisions concerning contempt, sanctions, credibility, present ability, devices, and liberty are being made on independently tested facts rather than accumulated assumptions.

Respectfully submitted,

**\s/ Damien "DDOT" Washington**
1824 Metzerott Road B5 Adelphi, MD 20783
prejudicialproseproceedings@gmail.com

**SIGNATURE:**