UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BABYGRANDE GLOBAL, INC., Plaintiff, -against- ENRIQUE MAG RODRIGUEZ; EVEN LABS INC.; DAMIEN DDOT WASHINGTON, Defendants. | 24-CV-6785 (JGLC) **ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

On September 16, 2026, Defendant Damien "DDot" Washington emailed the Court, the Pro Se Filing Intake Unit, and all counsel a motion requesting that, pursuant to 28 U.S.C. § 455(a), the Court recuse itself from, reassign, or grant independent review of "the Washington-specific contempt, device, sanctions, forensic, discovery, evidentiary, and enforcement proceedings in this action." ECF No. 332 ("Motion") at 1. That motion has now been docketed at ECF No. 332. For the reasons stated below, the motion is DENIED.

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States" is required to recuse themselves from a proceeding in which their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "In determining whether Section 455(a) requires recusal, the appropriate standard is objective reasonableness—whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (quoting *Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d Cir. 1998)). The decision to recuse oneself, in the first instance, remains with the judge against whom recusal is sought. *See In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

Mr. Washington argues that the "cumulative result" of the Court's actions towards him since he first appeared in this case, in May 2025, require recusal, reassignment, or independent review. Motion at 2; *see* ECF No. 75. In particular, he argues that the Court's "asymmetric" rulings, "extraordinary" grant of forensic discovery, and "one-sided scrutiny" throughout the months-long forensic process warrant relief. On each of these fronts, however, the record is clear: "a reasonable person, knowing all the facts," would not conclude that the Court's "impartiality could reasonably be questioned." *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021) (quoting *United States v. Thompson*, 76 F.3d 442, 451 (2d Cir. 1996)). Indeed, "to say that [Section] 455(a) requires concern for appearances is not to say that it requires concern for mirages." *Id.* (internal citation omitted).

First, Mr. Washington points to an alleged "asymmetry" in the Court's rulings—namely, rulings against him and in favor of the EVEN Defendants. Of course, the Court *has* ruled in favor of Mr. Washington. *See, e.g.*, ECF No. 167. But that is not the point. "It is well established that '[t]he recusal statute was never intended to enable a litigant to oust a judge for adverse rulings made.'" *Tatintsian v. Vorotyntsev*, No. 16-CV-7203 (GHW), 2026 WL 691508, at *3 (S.D.N.Y. Mar. 11, 2026) (quoting *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980)). "A trial judge must be free to make rulings on the merits without the apprehension that if [s]he makes a disproportionate number in favor of one litigant, [s]he may have created the impression of bias." *Walker v. Carter*, No. 12-CV-5384 (ALC) (RLE), 2015 WL 4510406, at *1 (S.D.N.Y. July 24, 2015) (quoting *In re Int'l Bus. Machines Corp.*, 618 F.2d at 929). "Judicial independence cannot be subservient to a statistical study of the calls [s]he has made during the contest." *Id.* Mr. Washington's dispute with the Court's allegedly unfair "cumulative treatment" therefore falls short.

Second, Mr. Washington contends that the Court "subordinated" his defenses while it granted "extraordinary forensic relief" against him. Motion at 3. The Court has already explained its rulings as to Mr. Washington's defenses, so need not repeat them here. *See* ECF No. 260 (denying Mr. Washington's motion for judgment on the pleadings and for severance for the reasons stated at the case conference on April 14, 2026). And, as previously stated, the Court must be free to make rulings on the merits. But Mr. Washington's arguments about the forensic discovery process merit further discussion.

The discovery demands that have been made of Mr. Washington are far from "extraordinary." Mr. Washington was subject to a straightforward Court order to hand over a cell phone and laptop at issue for brief forensic examinations for documents relevant to this case. The Court initiated this process precisely *because it was sensitive* to Mr. Washington's concerns about losing access to the cell phone, which he represented was his only phone. The Court ordered the forensic search in December of last year. ECF No. 138. It set the search protocol in January. ECF No. 183. It is now September. This delay did not result from alleged "imbalance[s]" in this process. Motion at 3. Instead, the record makes clear that Mr. Washington's consistent refusal to comply with the Court's orders is the reason the Court has had to issue repeated orders to attempt to effectuate a simple discovery process.

Third, Mr. Washington's specific complaints about the Court's "one-sided scrutiny" throughout this months-long process is belied by the record. As stated previously, on December 2, 2025, the Court ordered that Mr. Washington return the EVEN Defendants' laptop after Mr. Washington conceded the laptop belongs to EVEN, and that both EVEN's laptop in Mr. Washington's possession and Mr. Washington's cell phone would be subject to a forensic evaluation and search for relevant documents. ECF No. 138.

Then, following a case management conference on January 15, 2026, the Court directed Mr. Washington to "meet and confer with counsel for Plaintiff and the EVEN Defendants to discuss mutually agreeable dates to travel to the Court to submit the laptop and cell phone for forensic evaluation and search" and to "submit a joint letter informing the Court of such dates no later than January 22, 2026." ECF No. 183. The Court made clear that if it did not receive a letter by that time, it would set a date for the forensic search. *Id.*

Mr. Washington did not submit a joint letter or provide the Court with any potential availability. *See* ECF Nos. 184, 188. Instead, Mr. Washington explained that, not only was he unavailable during the dates proposed by the EVEN Defendants, but he was unable to commit to future dates for an entire month because of potential job interviews and meetings "anticipated during the month of February." ECF No. 188. Mr. Washington also explained that, as of January 22, 2026—the due date for the joint letter and the date of Mr. Washington's writing—his "physician ha[d] directed that [he] abstain from professional duties and travel for a period of approximately three weeks." ECF No. 188.

On January 23, 2026, the Court directed the parties to "meet and confer to propose mutually agreeable dates during the week of February 9, 2026—around Mr. Washington's apparent recovery date—and to submit those dates to the Court by January 30, 2026. ECF No. 187. The Court made clear that "if Mr. Washington refuse[d] to participate in this meet and confer, the Court will select a date without his input." *Id.* However, citing additional "referral appointments" related to his medical evaluations, Mr. Washington wrote separately to the Court to explain that he was not available during the week of February 9, 2026. He did not propose any dates when he would be available. ECF No. 195; *see also* ECF No. 196.

The Court then scheduled the forensic search for February 25, 2026, at 10:30 a.m., in the White Plains Courthouse—well after Mr. Washington's recovery period and with a lead time of twenty days. ECF No. 199. Mr. Washington requested that a discovery conference take place before the examination. ECF No. 201. The Court denied his request. ECF No. 204.

Mr. Washington then requested that travel costs be "advanced" to him by the EVEN Defendants and that the proceedings conclude by midday because of his religious observance. ECF No. 210. In attempting to arrange Mr. Washington's travel to White Plains, the EVEN Defendants contacted Mr. Washington at least six times before he responded. ECF No. 211. They offered to book his Amtrak train travel either by directly booking his ticket on his behalf, or by reimbursing his costs after he submitted receipts. *Id.* When Mr. Washington did respond to EVEN, he requested $1,000 in advance "for his anticipated travel expenses." *Id.*

Five days before the scheduled forensic examination, the Court again ordered that Mr. Washington appear. ECF No. 214. He "must be present and must bring both the cell phone and laptop at issue with him for evaluation," the Court wrote. *Id.* The Court also explained, for the first time, that should Mr. Washington fail to comply, "the Court may find him in contempt." *Id.* The Court also directed Mr. Washington "to confirm his travel with the EVEN Defendants by 5:00 p.m. on February 22, 2026," with no lump sum payment in advance. *Id.*

Mr. Washington did not "confirm his travel" by the deadline. Instead, he emailed the EVEN Defendants three minutes before the deadline and provided them with only his name, email address, and telephone number. *See* ECF No. 216. When the EVEN Defendants replied to explain that the information provided was insufficient and "did not comply with the Court's order," Mr. Washington sent them three transportation options: (1) a car company that describes itself as a luxury "chauffeur service"; (2) a helicopter; or (3) a private jet. *Id.* He also explained

to the EVEN Defendants that, because of his religious observance during Ramadan, the search would need to conclude by 11:00 a.m. *Id.*

The Court then directed Mr. Washington to pay for his own travel. ECF No. 217. The Court explained that the EVEN Defendants would "reimburse his reasonable travel costs after he presents them with receipts." *Id.* Again, the Court warned that should Mr. Washington fail to appear "in person with the cell phone and laptop at issue," he risked being held in contempt. *Id.*

Mr. Washington did not appear on February 25, 2026. *See* ECF No. 221. At 3:40 a.m. that morning, Mr. Washington sent the EVEN Defendants an email that the EVEN Defendants characterize as "demanding that we arrange transportation for him without providing an address." ECF No. 223. Counsel for the EVEN Defendants did respond—including as late as 4:43 a.m.—in an attempt to arrange Mr. Washington's travel, but Mr. Washington did not reply. ECF No. 223-1.

After Mr. Washington failed to appear yet again, the Court issued an Order to Show Cause as to why an order should not be issued holding Mr. Washington in contempt and why he should not be required to pay monetary sanctions, costs and/or attorneys' fees in connection with his violations. ECF No. 221. Mr. Washington did timely respond to the Order to Show Cause, but he failed to copy the other parties' counsel on his email, in contravention of the Court's prior orders. *See* ECF No. 229.

In early March, the Court again directed Mr. Washington to appear for the forensic search—this time on March 19, 2026, at 12:00 p.m., and to bring the cell phone and laptop at issue with him for evaluation. ECF No. 229. The Court provided detailed instructions to Mr. Washington to ensure that he arranged his travel with the EVEN Defendants by midnight on March 10, 2026. Once again, Mr. Washington failed to provide the EVEN Defendants with his

necessary travel information by this deadline. At a case management conference on March 11, 2026, the Court directed Mr. Washington to give the EVEN Defendants the information they needed to book his travel *during* the conference; it waited until the EVEN Defendants had confirmed that they had received the information. *See* ECF No. 238. But shortly after the conference ended, Mr. Washington sent a letter requesting to "adjourn[], reschedul[e], or [provide] other accommodation" during the March 19 examination. *Id.* He did not send the letter to the Pro Se Intake Unit or to opposing counsel. *Id.*

Mr. Washington presented two reasons for rescheduling or providing other accommodations during this examination. First, he provided an almost-entirely redacted note from what appeared to be a chiropractor's office asserting that he could not travel for "more than 30 minutes in duration" through March 9. *Id.*; *see* ECF No. 227. That date had already passed by the time Mr. Washington sent his letter, and the examination itself was set for ten days after March 9. *See* ECF No. 238. Second, Mr. Washington explained that the March 19 examination "create[d] a conflict with his ongoing religious observance during Ramadan and Eid." *Id.* The Court granted Mr. Washington a reasonable accommodation to leave the forensic examination to pray. *Id.* As the Court explained, Mr. Washington "need not be present for the entire examination; he need only hand over the devices for evaluation." *Id.*

The Court again directed Mr. Washington to appear for the March 19 forensic search. *Id.* Mr. Washington did not appear. *See* ECF No. 249.

The Court then ordered Mr. Washington to show cause in person at the White Plains courthouse—approximately one month later—why he should not be sanctioned for violating multiple Court orders. ECF No. 249. The Court also directed him to bring the cell phone and

laptop at issue with him. *Id.* Mr. Washington did not appear for this show-cause hearing. *See* ECF No. 263.

Nevertheless, although Mr. Washington had failed to appear at numerous hearings and was in violation of numerous Court orders, the Court attempted to make it easier for Mr. Washington to comply with the Court's previous directions by reaching out to the District of Maryland to arrange for the forensic evaluation closer to Mr. Washington. *See* ECF No. 277. The Court ordered Mr. Washington to provide, by April 29, 2026, his availability on May 7, 2026, for a Maryland-based search. *Id.* Should he be unavailable for that date, the Court explained, he "must provide additional availability for the week of May 11, including his hours of availability." *Id.*

Mr. Washington replied that he was not available on either May 7 or during the entire week of May 11, 2026. ECF No. 283. He explained that "in addition to medical treatments and other scheduled engagements on May 7, 2026, [he] ha[d] a preexisting commitment with nonprofit organizations that cannot be rescheduled." *Id.* "During the week of May 11, 2026," he continued, he had to "remain under medical restrictions through May 13, 2026, and following that date he [was] expected to join his family for bereavement and funeral-related arrangements." *Id.* For the first time, Mr. Washington added that he had "recently visited an FBI field office and [wa]s scheduled to begin intake shortly concerning" "cybersecurity and safety-related" related to the devices. *Id.*

On May 11, 2026, the Court found Mr. Washington in contempt. ECF No. 285. The Court ordered Mr. Washington to coordinate with, and bring the phone, laptop, and information needed to open the devices to, the U.S. Marshals Service at the federal courthouse in Greenbelt, Maryland, by May 25, 2026. *Id.* After that date, the Court made clear, Mr. Washington would

"be fined $100 per day for every day that he is in violation of this order—in other words, for every day that he has not provided the phone, laptop, and information needed to open the devices. After 14 days, his daily fine will increase to $500 per day until he complies." *Id.* The Court capped Mr. Washington's total fine at $15,000, out of concern for his financial circumstances. *Id.* The Court then explained that "[i]f Mr. Washington continues to refuse to comply and the fines reach $15,000, the Court will issue an order to show cause as to why the Court should not issue a warrant for Mr. Washington's arrest. If Mr. Washington continues to refuse to comply, the Court will issue such a warrant, and Mr. Washington will be incarcerated until he complies." *Id.*

By May 25, 2026, Mr. Washington had failed to contact the U.S. Marshals and had not submitted the phone or laptop for examination. *See* ECF No. 291.

On May 28, 2026, following updates from Mr. Washington and EVEN, the Court issued another order confirming that Mr. Washington remained in contempt but provided alternative means for him to comply with its prior order. ECF No. 294. The Court directed Mr. Washington to submit a declaration no later than June 1, 2026. *Id.*

On May 29, 2026—179 days after the Court first ordered that Mr. Washington return the laptop and present both the laptop and phone for a forensic search—he brought a cell phone to the federal courthouse in Greenbelt, Maryland, where it was analyzed by the EVEN Defendants' forensic vendor. *See* ECF Nos. 295–96, 299. However, the EVEN Defendants contend that "the device that Mr. Washington dropped off at the Courthouse is not the phone at issue" and the device Mr. Washington dropped off "contain[ed] almost no data." ECF No. 296.

Mr. Washington also claims that he lost the laptop at issue in an Uber, but he cannot provide a receipt for the Uber—not a booking, not a trip, not a cancelation—to document that

trip. *See* ECF No. 300-1. And despite Mr. Washington timely submitting his declaration on June 1, 2026, through new counsel, ECF No. 297, his declaration presented apparent contradictions with many of his prior statements, *see* ECF No. 298.

As such, the Court scheduled an evidentiary hearing with respect to Mr. Washington's claims that he lost the laptop and ordered him to appear for the hearing for questioning. ECF No. 314. In advance of that conference, the Court had to repeatedly direct Mr. Washington that he was required to attend that conference in person. *See, e.g.*, ECF Nos. 325, 329, 330.[1] It was during the Court's refusal to adjourn this conference that Mr. Washington filed the instant motion.

All the while, Mr. Washington appealed the Court's rulings—particularly those directing him to appear in person and submit the laptop and phone to forensic investigation—to the Second Circuit Court of Appeals, moving for writs of mandamus. And at every turn, the Court of Appeals denied Mr. Washington's appeals. *See* ECF Nos. 214, 228, 247.

Contrary to Mr. Washington's characterizations, then, the record does not reflect the "asymmetry," "one-sided scrutiny," or "imbalance" at the heart of Mr. Washington's complaints. Instead, the record demonstrates Mr. Washington's repeated contravention of the Court's clear orders, and the Court's efforts to ensure his compliance. Given this record, the Court concludes that no "reasonable person, knowing all the facts," would question its impartiality. *United States v. Wedd*, 993 F.3d at 114.

---

[1] During that hearing, which Mr. Washington ultimately attended, counsel for EVEN Defendants went through on the record the other ways, not reflected in this Order, that Mr. Washington has evaded, ignored, and attempted to circumvent the Court's orders and has otherwise shown contempt for this Court.

Accordingly, Mr. Washington's Section 445(a) motion is DENIED.

Dated: September 28, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge